DAVID CARSON, SEN. AND DAVID CARSON, JR. *vs.* A. A. WHITE, CLAIMANT, &c.—*December*, 1847.

The plaintiffs, on the 21st September, 1844, filed proceedings in *Baltimore* County Court, under the act of 1838, ch. 205, to establish a lien for work and labor done upon a house in the city of *Baltimore*, at the request of J. The claim filed showed that the work had been done between May and September, 1844, and the proof *offered* in support of it was the written admission of J. made in September, 1844, that the claim was correct. It appeared that in July, 1844, he had mortgaged this property to W. *Held*: That a mortgage would afford very little security for the debt intended to be secured thereby, if, after its execution, the mortgagor could by admissions create liens on the mortgaged premises; and thereby lessen or destroy the value of the mortgage.

The mortgagor can by no acknowledgment subsequent to the mortgage, prejudice the interest of the mortgagee; and hence the admission in this case ought not to have been received.

A mortgagee, in such a case, claiming the property sought to be affected by the plaintiffs, may appear to and defend the action.

This proceeding was in *rem.*

The trustees of the debtor-mortgagor, under the insolvent laws, might have appeared to defend the equity of redemption.

Our attachment laws do not expressly authorize a claimant of property to appear to an attachment; yet claimants are permitted to interpose their claim against a judgment of condemnation.

No mechanic, in virtue of the act of 1838, has a lien on the house which he has built or repaired, unless he has *filed* in the office of the Clerk of *Baltimore* County Court, a statement of his demand, and in that statement has given, not only the *sum due*, but also the *nature* and *kind* of work done, and the *kind* and *amount* of materials furnished, and the *time* when the work was done and materials furnished.

To obtain such a lien, the statement *filed* must state the particulars of his demand, the items, whereby all who may be interested can ascertain not only the amount demanded, but the correctness and reasonableness of the demand itself.

These statements, when filed, must be explicit and comprehensive, to protect strangers to the contract, who may have other contracts relating to the same property or liens thereon, from fraud, and may be required by the party at whose request the work is performed.

APPEAL from *Baltimore* County Court.

On the 21st September, 1844, *David Carson, Sen.* and *Jr.*, prosecuted, out of the County Court, a writ of *scire facias*, reciting:

3    v.6

" Whereas, *D. C. Sen.* and *D. C. Jr.*, carpenters, carrying on trade under the firm of *D. C. & Son*, have filed a claim in our court, for the county of *Baltimore*, against *John Carson* of *D.*, for the sum of $357 50, with interest from, &c., for work done by them as carpenters, and for painting, plastering, glazing and materials furnished, and for grading, digging and brick work done, in the erection and construction of a brick dwelling house, being two stories and an attic high, with a basement covering the whole front of the following lot. Beginning for the same at, &c., as a lien as well against said lot of ground and dwelling thereon as against said *Carson*, owner or reputed owner thereof. And whereas, it is alleged that the said sum still remains due to the said *D. C. Sen.* and *D. C. Jr.*, partners as aforesaid, now we command you, that you make known to the said *John Carson* of *D.*, and to all such persons as may hold or occupy the said building, that they be and appear before the judges of our said court, at a court to be held at *Baltimore* city, on the first day of January next, to show if any thing they know or have to say, why the said sum of, &c. should not be levied of the said building, to the use of the said *D. C. Sen.* and *D. C. Jr.*, partners as aforesaid, &c."

This writ was made known by copy left with tenant in possession, 25th September, 1844, also advertised according to law.                    " N. Tracy, *Sheriff.*"

*John Carson* of *D.* appeared and pleaded that *D. C. & Son* did not do and perform upon, in or about the said building, the work and labor in the said claim, in the said writ mentioned, or any part thereof, &c.

And for further plea in this behalf, &c., the said defendant says, that the said plaintiffs did not furnish the materials, in their said claim charged, in and about the building of the said house, upon the said lot, &c. And of this he puts himself upon the country, &c.          T. P. Scott, *Attorney Defendant.*

*Ambrose A. White,* at January term, 1846, filed his petition, alleging that before the filing of the claim of lien in this case

by the said plaintiffs, to wit: on 14th July, 1844, the said defendant, by deed of that date duly mortgaged the said lot of ground, in the said case mentioned to him, the said *Ambrose;* and that afterwards, to wit: on the fifth day of August, 1844, and before the filing of the said claim, the said defendant applied to the commissioners of insolvent debtors of the city and county of *Baltimore,* for the benefit of the insolvent laws of *Maryland.* And the said *Ambrose* says that he is the party in interest, in the matter of this suit, against the said property as above stated. Wherefore he prays the court here to permit him to defend the said suit, &c.

Leave was granted to the said *Ambrose A. White,* to appear as claimant, and defend the said suit as prayed; and he accordingly appeared.

At the trial of this cause, the plaintiffs to prove the issue on their part, offered in evidence, *the claim on which the writ issued in this case,* a general statement of the claim as set forth in the *scire facias* and the following account:

*John Carson* of D. To *David Carson & Son.*

To amount of work done as per verbal contract for carpentering, painting, plastering and glazing, and materials for the same, in and upon the dwelling-house on *East Baltimore* street, described above, . . . . . $335 00
To extra framing of cupboard, . . . 10 00
" grading yard, digging, &c. . . . . 10 00
" brick work, viz. paving yard and hearth and
cutting up for slating, . . . . . 2 50

$357 50

Said work having been commenced on the 1st May, 1844, and finished on the 14th September, 1844. Filed to be recorded, the 20th September, 1844, same day recorded and examined Per THOMAS KELL, *Clerk.*

21st September, 1844, *sci. fa.* issued, No. 48, to January term, 1845.

True copy. Test, A. W. BRADFORD, *Clerk.*

Also, a written admission of *John Carson* of *D.*, the original defendant in this cause, as to the correctness of the plaintiffs' claim, as follows :

*Mr. John Carson,*               To *David Carson & Son*, Dr.

|  |  |  |
|---|---|---|
| 1844, May 1st, (in pencil.) | To amount of contract work, carpentering, painting, plastering, and materials for the same, . . . . | $335 00 |
|  | To extra framing cupboard, &c. | 10 00 |
| To grading yard, digging, &c. . . . . | | 10 00 |
| " brick work, viz. [in pencil,] paving hearths and yard, and cutting up for slating, . . . . | | 2 50 |
|  |  | $357 50 |

Int.

*Baltimore*, 1844, 20th September.    I admit this bill for $357 50, to be correct as above stated, per contract (verbal) between us, and for extras.        JOHN CARSON of *D.*

To the admissibility of this evidence, the defendant's counsel objected, because the said *John Carson* of *D.* having acquired the house and lot on which the lien in this case is claimed, on the 6th April, 1844, had mortgaged the same on the 11th July, 1844, to *Ambrose A. White*, and on the 5th August, 1844, had filed his petition as an applicant for the benefit of the insolvent laws of *Maryland*, and the said admission was made thereafter, viz. on the 20th September, 1844, which objection the court (PURVIANCE and LEGRAND, A. J.) sustained, the said *John Carson* of *D.* being then the defendant on the record, and said mortgage and application being admitted.    The plaintiffs excepted.

The plaintiffs excepted also to the leave granted to *A. White* to appear and defend this cause.

It was then agreed between the counsel that the pleas theretofore filed, should be considered as filed by said *White*, errors waived : and that he, *White*, be responsible for all the costs as defendant.

The plaintiffs then offered in evidence the claim on which

the writ issued, deposition to maintain the same, and proof of a particular measurement bill of the work done, and its value.

The defendant, on his part, offered in evidence, a deed of mortgage from *John Carson* of *D.* to *Ambrose A. White*, of 11th July, 1844, it being admitted to have been on the house in question, which said *John* had bought in April, 1844.

The defendant prayed the court to instruct the jury that the plaintiffs are not entitled to recover in this suit:

1st. Because there is no evidence of any special contract between the plaintiffs and the defendant for the work and materials, said to have been done and performed, in and upon the buildings, &c. and furnished therefor, &c. as stated by the said plaintiffs in the paper filed by them, with the clerk of this court, upon which the said writ issued.

2d. Because there is no evidence of any such contract between the parties as that set forth in the said claim filed, &c.

3d. Because the said pretended claim, upon which the said writ issued, and which pretended claim was filed in the office of the clerk of this court, before the issuing of said writ, does not set forth the amount or sum claimed to be due for the *work and labor* said to have been done and performed in and upon the said lot of ground in the said claim mentioned and described.

4th. Because the said pretended claim upon which, &c. and which was filed, &c. does not set forth the amount or sum claimed to be due for *materials* said to have been furnished, &c. or the nature and kind of such materials so said to have been furnished, &c.

Which prayers the court granted. The plaintiffs excepted.

The trial of the cause having been commenced on the 4th, the prayers of defendant were considered, and decision thereupon delivered on the morning of the 5th February. Whereupon on said 5th, before the final decision of the case, the plaintiffs by their counsel filed the following motion and affidavits.

The plaintiffs asked leave of the court, and at this stage of the cause, (when the plaintiffs and defendant had concluded

their respective evidence, and defendant had submitted three several prayers to the court, who had decided thereon) to offer evidence of the special contract set forth in the claim for lien filed in this cause, and the leave is prayed because of the discovery of such evidence (to establish the making of said special contract,) since the adjournment of this court on the 4th instant, when the trial was, so far as above stated, concluded, the existence of which evidence was previously unknown to plaintiffs or their counsel, and not by any of them discovered until the evening of the 4th, after the adjournment of the court. That *George Gelbach* is the witness by whom the plaintiffs expect to establish the existence of said special contract. This motion was sustained by the affidavit of one of the plaintiffs.

This prayer was submitted, notwithstanding the 25th rule of said court, viz.:

" 25th. The court will require, in all cases, that the whole testimony intended to be produced by both plaintiff and defendant shall be offered before any question of law is raised, except objections to the competency of testimony, which must be made when it is offered, or as soon thereafter as the party shall. be apprised of the grounds of such objection.    After the whole evidence is concluded, the court, when required, will instruct the jury on the law of the case, and the verdict shall be taken, or a non-suit entered, with leave to either party to move the court in bank to set aside the verdict, or non-suit for mis-instruction at the trial."

This motion the court overruled, and declared the evidence offered, at that stage of the cause, because of said rule, inadmissible; although discovered since the submission of the cause on the preceding day: and before its final decision.    To which decision of the court, overruling said motion and excluding said evidence, the plaintiffs excepted.

The verdict and judgment in this case being against the plaintiffs, they prosecuted the present appeal.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS, MAGRUDER and MARTIN, J.

By W. J. WARD, for the appellants, and

By T. P. SCOTT, for the appellee claimant.

MAGRUDER, J., delivered the opinion of this court.

This is a proceeding by *scire facias*, grounded upon the act of 1838, chap. 205. The plaintiffs' claim is for work done, for carpentering, painting, glazing, and materials for the same, in and upon the dwelling-house in *East Baltimore* street, of which a description is given. The *scire facias* directs the sheriff to make known to said *John Carson* of *David*, and to all such persons as may hold, or occupy, said building, " to appear in *Baltimore* County Court, on the first day of January, 1845, to show if any thing they know or have to say, why the sum claimed should not be levied of the said building to the use of said *David Carson*, *Sen.* and *David Carson*, *Jr.* partners as aforesaid, if to them it shall seem expedient."

The sheriff's return is " made known by copy left with the tenant in possession 25th September, 1844, and also advertised according to law."

Who was the tenant in possession is not stated, but at the same term, *John Carson* of *David* appeared, and by plea, denied that the plaintiffs did " do, or perform upon, in or about the said building the work and labor in the said claim in the said writ mentioned, or any part thereof. And for further plea said that the said plaintiffs did not furnish the materials in their said claim charged, in or about the building of the said house upon the lot aforesaid."

At January term, 1846, the appellee appeared in court, and suggested that before the filing of the claim of lien, 4th July, 1844, the defendant mortgaged the said ground to him, and on the 5th August, 1844, (before the filing of the said claim of lien by the plaintiffs) the defendant applied for the benefit of the insolvent laws of *Maryland*, and the appellee suggested that he is the " party in interest in the matter of this suit against

the said property," and prayed the court to be permitted to defend the said suit.

The record states that the leave was granted, and the appellee accordingly appeared to said suit by his counsel. Immediately following this is an agreement signed by counsel, that the pleas shall be considered as filed by the appellee, errors waived, and the said appellee (*White*) is individually responsible for all the costs as defendant.

There was a verdict for the defendant, several bills of exception having been taken by the plaintiffs in the course of the trial, which are now to be examined.

In the first exception, it is stated that the plaintiffs to support their claim, offered in evidence their statement of the work alleged to have been done by them in and about the house on the lot there described, and at the foot of it this acknowledgment :

<i>"Baltimore,</i> 1844, 12th September.

"I admit this bill for $357 50 to be correct as above stated, per contract (verbal) between us, and for extras.

Signed,          J<span>ohn</span> C<span>arson</span> of *D.*"

To the admission of this evidence the defendant objected, because the said *John* had, before the said admission, executed the mortgage and made the application for the benefit of the insolvent laws—which facts were admitted by the plaintiffs.

Because of the rejection by the court of this testimony offered by the plaintiffs, the first exception to be found in the record is taken. Did the court err, in refusing to admit this testimony ?

A mortgage would afford very little security for the debt intended to be secured thereby, if, after its execution, the mortgagor could, by admissions, create liens on the mortgaged premises, and thereby lessen, or it might be, destroy the value of the mortgage. The mortgagor can, by no acknowledgment subsequently to the mortgage, prejudice the interest of the mortgagee. The admission made in this case by the mortgagor ought not to have been admitted in the trial of those issues.

Immediately following the first exception it is stated—the

defendant's counsel then made a written motion as follows : referring to the statement before given, and praying that the appellee for the reasons therein stated, have leave to defend, which is granted by the court, and to this there is an exception by the plaintiffs.

This part of the record, taken in connection with what has been previously stated, relative to an application by the appellee to the court, is not very easily to be understood. It will be assumed, however, that the design of the exception was to question the authority of the court below, to permit an appearance in the case by the appellee.

Why should he not be permitted to appear ? This is a proceeding *in rem*, and is designed to charge, with the claim of the appellants, property conveyed to the appellee, and the legal title to which we must assume was in him. Who was the proper person to appear, and resist this claim, as a claim against the mortgagee's interest ? It cannot be that the mortgagor was the only person to decide whether the claim should be resisted or admitted.

It is suggested that *John Carson's* trustee, appointed upon his application for the benefit of the insolvent laws, was the proper person, and no doubt he was a fit person to defend the equity of redemption, which had been conveyed to him, if he thought it of any value; but it is equally clear, that the appellee was not bound to abandon his title to the protection of the trustee, over whom he had no control, and who, by his acts, admissions and omissions, might prejudice the rights of the appellee. If the appellee, claiming the property as he did, could not defend the suit, surely the plaintiffs ought not to be permitted to obtain a judgment, by which his interest was to be affected.

If the appellee could not be made a party, why is the sheriff to give notice to all such persons as may hold or occupy the building ? Why are all such persons to appear before the judges of the court, to show if any thing they know, or *have, to say* why the sum of money claimed should not be levied of the said building, "if to them it shall seem expedient?" The appellee here

was one of the persons, to whom the sheriff, it would seem, was to give notice. Why is he to be warned to appear, if although he "have to say," why the money is not to be levied on his property, he is not to be permitted to say it? He could only say it by being permitted to be made a party to the suit.

· Our attachment laws do not expressly authorize the claimant of the property attached to appear to the suit; yet claimants are permitted to interpose their claim, and the cases of *Campbell vs. Morris, 3 Harris & McHenry*, 552, and *Ranahan vs. O'Neal*, 6 *G. & J.* 298, tell us that they have the right to appear. If then the act of 1838 did not expressly authorize the appellee to appear; yet this being a proceeding *in rem*, his right to appear and defend his interest cannot be questioned. There are, however, many clauses in this Act of Assembly which would be without meaning, if they leave the owner of the property designated to be condemned without liberty to show cause why his property should not be made to pay a debt for which he never was answerable. See clauses 16, 17, &c.

After excepting to the two above mentioned decisions by the court, the plaintiff then offered other testimony designed to prove the amount and value of the work done, and of the materials furnished about the said house; when the testimony was offered, the defendant prayed the court to instruct the jury that the plaintiff was not entitled to recover for the several reasons set forth in the exception. This instruction the court gave, and thereto also an exception was taken.

In examining the question thus brought before the court, it is proper to bear in mind that the court is not to inquire how much of this testimony ought to have been admitted, or the value of any portion of it; if this had been an action brought for the value of this work, and of the materials furnished against the person, at whose request the materials were furnished, and the work done. The plaintiffs claim a right to a judgment, the effect of which would be to charge one man's property with the payment of a debt contracted by another,

without the request, and perhaps without the knowledge, of the owner of the property. Grounding this proceeding upon the act of 1838, they are, of course, to prove that this act gives the remedy which they seek by this proceeding; and if the proof adduced is not such as the law requires of them, they have no cause to complain of the judgment of the court below.

The act of 1838 does not deprive any creditors of the remedies which the law gives to other creditors having claims of the same description. This additional or extraordinary remedy is allowed to mechanics and some others, if they comply with the conditions in the law prescribed, and the creditors who think proper to proceed under this law must show substantial compliance by himself with its requisites. No mechanic has, in virtue of the Act of Assembly, a lien on the house which he has built or repaired, unless he has filed in the office of the Clerk of *Baltimore* County Court a statement of his demand, and in that statement has given not only the sum due, but also the nature or kind of the work done, and the kind and amount of the materials furnished, and the time when the materials were furnished, and the work done.

The mechanic, or other person then, who would claim a lien in virtue of this Act of Assembly, in his statement, to be filed in the office of *Baltimore* County Court, must not only state the sum claimed, but must also, in the statement to be filed there, for the inspection and scrutiny of all persons who are or may become interested in the premises, give a *bill of particulars*, whereby all who may be interested can ascertain not only the amount demanded, but the correctness and reasonableness of the demand. The *items* must be furnished, in order that other creditors and persons interested may know for what services, and what materials, the sum alleged to be due is claimed, and thus have an opportunity of proving the injustice or extravagance of the demand. All this must be done in terms sufficiently explicit and comprehensive, in order to prevent the frauds which otherwise might be practised upon others—

strangers to the contract, by the claimant and the reputed owner.

That the Act of Assembly was not in this case complied with, will be made obvious by a comparison of the statement of the demand furnished by the plaintiffs, with that which makes a part of the deposition of *Samuel Harris*, to be found in the exception. The statement filed in the office is not such a statement as the law requires, and must be supposed to require, for wise reasons. Indeed, it gives only the information which is afforded, in a declaration upon a *quantum meruit*, for work done, and materials found. Yet, with that information, the defendant, although alleged to be the party at whose request the work is done, and the materials are furnished, is not bound to be satisfied, but may insist upon being furnished with the particulars before he can be required to plead; whereas, in a proceeding of this description, to affect the interests of entire strangers to the contract, if the particulars cannot be required in the statement to be filed in the office, it cannot be required by them at all.

Having failed themselves to comply with the requisites of the act of 1838, the plaintiffs cannot avail themselves of that law, but must have recourse to the remedies before existing for the recovery of their claim. There is, then, no error in the instruction given by the court in the last exception.

The act of 1845, to which we have been referred, has no application to this case.

JUDGMENT AFFIRMED WITH COSTS.