LUTHER C. CLARKE, Edward Dodge, John D. Maxwell and Others, Trading as Clarke, Dodge & Co. *v.* JOSEPH H. MEIXSELL and McHenry Grafton, Trading as Meixsell & Grafton, and Others.

*Decided June 24th, 1868.*

ATTACHMENT ; MOTION TO QUASH ; WHO MAY INTERVENE.

The truth of the statements in the affidavit of a creditor, suing out an attachment under the Act of 1864, ch. 306, may be inquired into, upon a motion to quash.                                                  p. 226

On the 29th of March, 1864, A. sued out an attachment against B., which was levied on the same day. On the 31st of the same month, B. made application for the benefit of the insolvent laws, and a trustee · was appointed for the benefit of his creditors. Subsequently C. recovered a judgment against B., and issued an attachment, by way of execution, which was laid in the hands of B.'s insolvent trustee, to affect the funds arising from the sale of the property, which had been attached at the suit of A. *Held:*

That C. had such an interest in the funds of B., in the hands of his trustee, as to entitle him to intervene in the attachment suit of A., and move to quash the attachment and show cause for the same. (*a*)

pp. 228-229

———————

(*a*) · See *Kean v. Doerner*, 62 Md. 477.

*Appeal from the Superior Court of Baltimore City. **222**

On the 29th of March, 1864, the appellees sued out an attachment in the Superior Court of Baltimore City, against John P. Derr, making oath under the Act of 1864, ch. 306, that the said Derr was *bona fide* indebted to them in the sum of six thousand dollars over and above all discounts, and that they "had good reason to believe that the said Derr, the defendant, was about to assign, dispose of, or conceal his property, or some portion thereof, with intent to defraud his creditors; and that the said Derr fraudulently contracted the debt and incurred the obligation respecting which the action was brought." At the same time they filed, as their causes of action, two checks payable to their order for $3,000 each, drawn by Derr on the Mechanics' Bank of Baltimore, and they gave the requisite bond. On the same day the Sheriff, in virtue of the attachment, seized two houses, the property of the defendant, and upon the return day of the writ, made due return of his proceedings. The defendant appeared by B. F. Horwitz, Esq., counsel, but did not move to dissolve the attachment, and a judgment of condemnation *nisi* was entered. On the 31st of March, 1864, Derr made application for the benefit of the insolvent laws of Maryland. B. F. Horwitz, Esq., was appointed trustee for the benefit of his creditors. In that capacity, he appeared in court on the 2nd of June, 1864, and moved that the judgment of condemnation *nisi,* which had been entered should be stricken out, and the attachment itself quashed. The motion to quash was afterwards withdrawn; but the motion to strike out the judgment *nisi* was renewed; and by consent said judgment was stricken out, and proceedings in the cause were stayed until further order.

Subsequently to these acts of the trustee, the appellants appeared in court, and by petition, filed in the cause on the 22nd of September, 1865, set forth that they were creditors of Derr, and non-residents, being citizens of New York; that they had obtained a judgment against Derr, and had thereon issued an attachment, by way of execution, against him, and *which had been laid in the hands of Mr. Horwitz, as **223** garnishee, who, in his answer, to the interrogatories to him propounded, admitted that he had in his hands as trustee, $7,125.40, arising from the sale of Derr's property, but set up,

as an objection against their attachment, the pendency of the attachment of Meixsell & Grafton; the appellants therefore prayed that the said attachment should be quashed, for the following reasons :

1. Because Meixsell & Grafton had not good reason to believe, that Derr was, at the time of the issuing of the attachment in this case, about to assign, dispose of, or conceal his property, or some portion thereof, with intent to defraud his creditors.

2. Because the said Derr did not fraudulently contract the debt, and incur the obligation, respecting which said action was brought.

3. Because of defects, apparent on the face of the papers.

4. Because of irregularities, defects and omissions in the proceedings.

5. Because of a failure to comply with the provisions of the Code and the Acts of Assembly in relation to attachments.

By agreement a commission was issued and a good deal of testimony taken thereunder. After hearing, the motion to quash, was overruled. From this decision. the present appeal was taken.

The cause was argued before Bartol, C. J., Nelson, Brent and Alvey, JJ.

*Thomas M. Lanahan* and *William Henry Norris,* for the appellants :

It is supposed by the appellees that the attachment Act of 1864, ch. 306, made the affidavit conclusive and unexaminable. If the Act had so proposed, it would be unconstitutional under the provisions of the Maryland Bill of Rights, and Constitution **224** existing in 1864. Sec. 5, Art. 12, Const. 1864. *But the Act had no such purpose, but expressly subjected the new remedy to the same principles which had been established as to the interpretation of prior attachment statutes. Act of 1864, ch. 306, sec. 44.

It had always been the rule and practice, that the affidavit should be examinable, whether as relating to the existence and amount of the debt, and all other necessary facts, to bring a case within the statutory requirements, as to jurisdiction. *Barr v. Perry,* 3 Gill, 319-327 ; *Ranahan v. O'Neal,* 6 G. & J. 301-2 ;

*Carson v. White,* 6 Gill, 26; *Gover v. Barnes,* 15 Md. 579; *Lambden v. Bowie,* 2 Md. 334; *Howard v. Oppenheimer,* 25 Md. 350.

Had the appellants a right to intervene in the attachment cause, which had been ordered to be stayed, to show that it had been issued without the existence of the required facts, and should be quashed as an impediment to their recovery against the insolvent trustee, Mr. Horwitz? They were creditors of Derr, residing in the State of New York, to whom Derr was indebted on a New York contract, and were not to be affected in their remedy by the insolvent application of Derr, or any assignment of his effects, in pursuance of the insolvent law. *Glenn v. Boston Glass Co.* 7 Md. 295-6; *Larrabee v. Talbott,* 5 Gill, 426; *Evans v. Sprigg,* 2 Md. 457.

These authorities certainly show that the appellants had greater right to Derr's assets than the insolvent trustee, Mr. Horwitz. Yet the court below allowed him to intervene and cause the action to be stayed, and refused the right of intervention to the appellants as strangers to the cause. There are no strangers in a proceeding *in rem,* when the persons have interests to be affected; and the attachment process is a proceeding *in rem. Carson v. White,* 6 Gill, 26; *Cockey v. Milne,* 16 Md. 206; *Ranahan v. O'Neale,* 6 G. & J. 301-2; *Farmers Bank v. Beaston,* 7 G. & J. 429; Starkie's Ev. 339; *\*Union Bank v. Kerr,* 7 Md. 88; Drake on Attach. **225** sec. 175.

The facts in the case did not authorize the attachment of Meixsell & Grafton against Derr. They fail to show that he fraudulently contracted the debt for which the attachment was issued. Nor had Meixsell & Grafton good reason to believe that Derr was about to assign, dispose of, or conceal his property, or some portion thereof, with intent to defraud his creditors.

*John M. Frazier* and *William Schley,* for the appellees :

The fact that the appellants are *non-resident* creditors, can have no possible influence upon the decision of the motion to quash. The appellees do not claim under the insolvent laws. They claim, *notwithstanding* the insolvent laws, the benefit of a *lien* validly acquired, by the pursuit of a legal remedy pro-

vided by law. And, *as between them and the appellants,* the question is precisely the same, as it would be, if the appellants were domestic creditors; or, as it would be, if Derr had not applied for the benefit of the insolvent laws.

The effect of the application upon the rights of the appellees was merely to put the property of the insolvent into the hands of the trustee in such right and plight as the insolvent himself held it at the time of his application; and subject of course, upon general principles of law to all validly acquired liens. The Legislature, nevertheless, from abundant caution has provided specially for this very case. Code of Pub. Gen. Laws, Art. 48, sec. 10.

The application for the benefit of the insolvent laws did not destroy the *lien* created by the issuing and levy of the attachment; and even if, as between the trustee and the appellees, the latter had been even more seriously interfered with, still, *as between the parties now before the court,* the insolvent laws cannot be regarded for any purpose whatever. The appellants, as non-resident creditors, of course, could not be *deprived* of any right by those laws; and they cannot *acquire* any new **226** *or better right *as between them and a domestic creditor,* by invoking the aid of those laws indirectly in their favor, by setting them up *as lessening* the remedies of such domestic creditor, or as *impairing* his lien. As between the parties now before the court, the case is the same as if there were no insolvent law.

The proceedings in this case being under the Act of 1864, ch. 306, the court acquired *jurisdiction presently* and *effectually,* on filing the affidavit, and giving an approved bond. (Section 41.) The Act gives a new and apparently a very harsh remedy: It is in the nature of an execution before judgment. But it was plainly the intention of the Legislature, in passing this Act, to give a *new* and *prompt* remedy to the creditor, *on the responsibility of his affidavit and bond.* If, then, *jurisdiction* attached, upon giving bond and making the affidavit, the case cannot be tried upon motion. The appellees are entitled to a trial before a jury on issues properly joined.

In a case of attachment against a *non-resident* or an *absconding* debtor, the jurisdiction depends on an extrinsic *fact;* and this extrinsic fact is triable on motion to quash. If the debtor,

*sued* as a non-resident, is really a *citizen,* the case is not within the provisions of our attachment laws. So, in the case of a person sued as an *absconding* debtor, if, in fact, he did *not* abscond, then the court has no rightful jurisdiction over him or his property. Code of Pub. Gen. Laws, Art. 10, secs. 1-3.

If, however, the case were properly before the court upon the motion to quash, then, *upon the proof,* the Judge did right in overruling that motion.

Upon *levying* the attachment of the appellees, a *lien* was created in their favor, and that *lien* stands unaffected by the subsequent application of Derr, for the benefit of the insolvent laws, and equally unaffected by the subsequent attachment of the appellants. Code of Pub. Gen. Laws, Art. 48, sec. 10; *Farmers Bank v. Beaston,* 7 G. & J. 421, 429. See for illustration *Green v. Van Buskirk,* 5 Wallace, 306.

*The attachment of Meixsell & Grafton was issued on **227** the 29th of March, 1864, and levied and scheduled on the same day. By agreement, the fund derived from the sale of the property of the insolvent Derr, was to take the place of the property—it was in the hands of the court—*in custodia legis,* and therefore not subject to the attachment of the appellants. As foreign creditors, they are in no better condition than if they were citizens seeking to enforce their claims. *Peck v. Jenness,* 7 How. 621; *Taylor v. Carryl,* 20 How. 583.

Nelson, J., delivered the opinion of the court.

This case presents three questions for the consideration of the court: First, is the affidavit and the filing of a bond in attachment under the Act of 1864, ch. 306, conclusive and unexaminable, and is the defendant in such attachment precluded from inquiring into the truth of the affidavit upon which such attachment issues? Under the Act of 1795, ch. 56, there is no doubt that the affidavit of the creditor may be inquired into, and if untruthful, or in any other respect defective, the attachment may be quashed on motion, or gotten rid of on plea. *Campbell v. Morris,* 3 H. & McH. 553; *Barr v. Perry,* 3 Gill, 313; *Lambden v. Bowie,* 2 Md. 334. But is said the law is different under the Act of 1864, and the reason assigned is, that the fact of a debtor's absconding is an extrinsic fact which must

be proven to confer jurisdiction on the court, and if it be shown
in contradiction to the affidavit of the creditor, that the debtor
did not abscond, the court would have no rightful jurisdiction
over him or his property.   If this be so, and there is no doubt
that it is so, is not the charge that a debtor fraudulently in-
curred an obligation, or contracted a debt, or that he had done
such acts, or so demeaned himself as to furnish his creditor
good reason to believe that he was about to assign or conceal his
property, equally extrinsic facts, necessary to be proved to
confer jurisdiction?   We confess we cannot see the distinction
**228** between *the two Acts.   We find nothing in the lan-
guage of the Act of 1864, to warrant it.    We think there-
fore that the truth of the statements of the affidavit of a
creditor suing  out an attachment under the Act of 1864, ch.
306, may be inquired into upon a motion to quash.   The sec-
ond question is, had the appellants the right to intervene in the
attachment cause of Meixsell & Grafton?   The complainants
were creditors of Derr, and had recovered a judgment against
him in the Superior Court of Baltimore City, upon which an
attachment by way of execution was issued and laid in the
hands of Derr's insolvent trustee, upon the funds arising from
a sale of the property which had been attached in the attach-
ment cause of Meixsell & Grafton; they thereby acquired an
interest in those funds and in their distribution.   In *Campbell
v. Morris,* 3 H. & McH. 552, which was a case of attachment,
decided in the General Court of this State, in 1797, Judge
Chase, delivering the opinion of the court, lays down the fol-
lowing principles:   " For any apparent defect in the proceed-
ings before the court, the attachment may be quashed upon sug-
gestion of such defect to the court, either by the defendant him-
self, or a third person claiming an interest in the property
attached.   Before the appearance of the defendant, which can-
not be but upon giving bail, which will be a dissolution of the
attachment, no evidence is admissible which relates to the merits
of the dispute between the parties ;  but the attachment being a
summary proceeding, and not changing in its nature until
there is an appearance with bail, every fact is cognizable by the
court which will show the attachment issued *irregularly.*"   We
have shown that Clarke, Dodge & Co., the appellants, had an
interest in the funds of Derr, in the hands of his trustee, and

in the distribution thereof; because supposing their attachment by way of execution should be postponed to the attachment of Meixsell & Grafton, yet they would have the second lien and would be entitled to any surplus after the payment of Meixsell & Grafton. What do they propose to intervene in the attachment *suit of Meixsell & Grafton for? Not to offer **229** evidence relating to the merits of the dispute between Meixsell & Grafton and Derr, but to show that the attachment was issued improvidently and irregularly, by reason of a fatal defect in the affidavit upon which it was based, and that by reason of such defect in the affidavit, the court issued the attachment without jurisdiction. We think from the authority to which we have referred, and which has been repeatedly recognized by the Court of Appeals since, as sound law; (see *Ranahan v. O'Neale*, 6 G. & J. 298), the appellants had a right to intervene in the attachment case of Meixsell & Grafton. Our next duty is to inquire whether or not from the evidence in the cause, John P. Derr, the defendant in the attachment case of Meixsell & Grafton, fraudulently contracted the debt and incurred the obligation respecting which the attachment suit was brought? And whether or not Meixsell & Grafton had good reason to believe that the said Derr was about to assign, dispose of or conceal his property, or some portion thereof, with intent to defraud his creditors? Did Derr fraudulently contract the debt and incur the obligation for which he was sued? The testimony to sustain this charge is from Mr. McHenry Grafton, Mr. Meixsell and Mr. Hall. Mr. Grafton swears that, on or about the 6th of June, 1863, Derr purchased from the house of Meixsell & Grafton one thousand barrels of flour, for which he gave his promissory note at thirty days. The flour was sold to him with the understanding that he did not intend to draw for the amount he should sell it for, until the maturity of his note; that Derr gave as his reason for asking credit for the flour, that, by that time, he thought sterling exchange would be much higher. At first, they refused him the credit, as flour was a cash article, and it was only after the reason stated, as given by him, that the credit was given. So it seems that, because Derr thought sterling exchange would be higher, Meixsell & Grafton sold him one thousand barrels of flour on credit. Derr was mistaken, however, and sterling exchange did not rise, and on the

**230** 6th of *July, 1863, when his note to Meixsell & Grafton fell due, he was unable to meet it, and wrote the following note to Grafton : " Grafton : Let me have your check for $6,000 until tomorrow. I have got to pay that note of yours due today, and haven't the money. I will deposit in Mechanics' Bank, and give you my check early tomorrow. Please give me the check and keep mum, as it won't do to let my credit suffer at this juncture." In compliance with this request, Meixsell & Grafton sent him their check for $6,000, and Derr paid their note. On the next morning, the 7th of July, 1863, Meixsell & Grafton sent to Derr for his check, as he had promised, and Derr sent them two checks for three thousand dollars each, drawn on the Mechanics' Bank. One of them was deposited in the Citizens' Bank and the other held at the request of Derr. Derr admits that he had no funds in the Mechanics' Bank to meet these checks at the time they were issued, but he expected to meet them in the course of the day by borrowing from friends. On the afternoon of that day, about two or two and a half o'clock, intelligence of the fall of Vicksburg reached Baltimore, and Derr was bankrupt in means and in energy. This is the history of the contracting of the debt and incurring the obligation respecting which the action was brought. We think there was no fraud practiced or attempted in the purchase of the flour. Derr was a speculator, perhaps a wild and imprudent one; he had before been fortunate, and he expected to realize large profits on this flour by the rise in sterling exchange. Meixsell & Grafton knew that Derr was a speculator; they knew the danger of speculation at that time, when everything was uncertain; but they believed Derr would be successful, or they would not have sold him the flour on credit; they were all disappointed. As to the transactions in regard to the checks—here is where Derr's troubles began; his note to Meixsell & Grafton fell due when he was without funds to meet it; to save his credit (he so told Grafton) he is compelled to borrow Meixsell & Grafton's check. This was incurring no addi-

**231** tional debt to *them; they got the money for their note, but leaving Derr still their debtor for $6,000. When he issued his checks to them on the Mechanics' Bank, he expected to deposit in time to meet them, but the crash came and he was broken. He did not attempt to conceal his condition, but still

hoped to be able to struggle through his difficulties, and refused to give up for that reason. We think the proof not sufficient to show that there was fraud in contracting the debt and incurring the obligation respecting which this action was brought. Had Meixsell & Grafton good reason to believe that Derr was about to assign, dispose of, or conceal his property, or some portion thereof, with intent to defraud his creditors? Derr swears positively he never designed to assign, dispose of, or conceal his property, or any part thereof, with intent to defraud his creditors. There is not an act of his, nor a declaration from which we think such an inference can be drawn. As to his speculations in gold, and the various transactions in regard to checks in different banks, and his defalcations in his dealings with the flour and tobacco merchants in the West, it would be a strained conclusion to say they were sufficient to induce the belief that he intended to conceal, assign, or dispose of his property to defraud his creditors. We think, from the evidence in this cause, there was no foundation for the affidavit, and that the attachment of Meixsell & Grafton must be quashed.

*Judgment reversed and attachment quashed.*

---

*THE UNITED STATES TELEGRAPH COM- **232** PANY v. GEORGE GILDERSLEVE.

*Decided June 24th, 1868.*

CONTRACTS ; BREACH ; DAMAGES ; SPECIAL. AGENTS ; AUTHORITY TO SUE IN OWN NAME. TELEGRAPH COMPANIES ; LIABILITY OF ; RIGHT TO RESTRICT ; PRINTED RULES ; NEGLIGENCE. RULES OF COURT ; PRAYERS ; DISCRETION OF COURT BELOW ; NO APPEAL.

Where an agent is interested, as for commissions, or by reason of special property in the subject matter, and the contract in reference thereto, is made in his name, it is perfectly competent for him to sue and maintain an action in his own name as if he were the principal. (*a*)

p. 245

---

(*a*)   As to the liabilities of an agent upon his contracts with third