# DANIELS *v.* SOLOMON.

ATTACHMENT; PLEADING AND PRACTICE; BURDEN OF PROOF.

1. One who claims a lien upon attached property has the same right to intervene in the attachment proceedings as one who claims title to the property.

2. A petition of intervention by judgment creditors in attachment proceedings which fails to allege that the defendants in attachment have no other property than that attached upon which the intervenors may levy execution is demurrable, but the defect is not a jurisdictional one, and may be cured by verdict and judgment.

3. The issue of a writ of execution on a judgment of a justice of the peace and a notice of that fact by the constable having the writ to the marshal who holds property of the judgment debtor under an attachment, is the equivalent of an actual levy by the constable, and will authorize the judgment creditors to intervene in the attachment proceedings.

4. Under the attachment law of the District, when the defendant's affidavit traverses the plaintiff's affidavit, upon which the writ was issued by the clerk, the burden of proof is upon the plaintiff to prove the facts alleged by him; and where judgment creditors of the defendants in attachment intervene in the proceeding, they become virtually defendants therein, with the right to traverse the affidavit in support of the attachment.

5. But where such intervenors charge collusion between the plaintiff and defendants in attachment for the purpose of allowing

the plaintiff to obtain unlawful preference over the intervenors and other creditors of the defendants, the burden of proof is upon the intervenors to prove such charge.

No. 668.   Submitted April 30, 1897.   Decided May 25, 1897.

HEARING on an appeal by the intervenors in an attachment proceeding from a judgment dismissing a petition of intervention.   *Reversed.*

The COURT in its opinion stated the case as follows:

The appellants, Bernard Daniel and Jacob Blumenthal, have appealed from a judgment of the Supreme Court of the District of Columbia, dismissing a petition of intervention filed by them in an action of debt depending in said court between Elias Solomon, as plaintiff, and Stern and Livingston, as defendants.   Solomon commenced said suit December 26, 1896, upon two notes amounting together to the sum of $1,400.   At the same time he sued out a writ of attachment against them on the ground that they had assigned, disposed of and secreted, and were about to assign, dispose of and secrete, their property with intent to hinder, delay and defraud their creditors.   The writ of attachment was executed by the marshal by seizing the goods of the defendants.

On January 21, 1897, appellants filed their plea of intervention in which they alleged : (1) That they had obtained a judgment against defendants for the sum of $162.50, besides costs, in the court of a justice of the peace of said District, and that a *fi. fa.* thereon had been issued and delivered to a constable for execution.   (2) That no real ground existed for plaintiff's attachment.   (3) That the affidavit does not state facts justifying the attachment.   (4) That defendants have done all in their power to expedite a judgment in favor of the plaintiff, and have colluded, and are now colluding, with him for the purpose of enabling him to obtain an unlawful preference over the intervenors and other creditors.   (5) They pray to be allowed to contest the

sufficiency of the affidavits of the plaintiff; to traverse the grounds of attachment stated in said affidavits, and to have an issue as to the existence of said grounds of attachment and the validity thereof.

The petition was sworn to and accompanied by a separate affidavit specifically denying that, at the time of suing out plaintiff's attachment the defendants had transferred and secreted, or were about to transfer and secrete, their goods for the purpose of hindering, delaying or defrauding the plaintiffs; and reiterating the charge of collusion between plaintiff and defendants. No objection was taken to the petition on any ground, and upon the motion of intervenors an issue was framed: "Whether the ground of attachment set forth in the plaintiff's affidavit existed at the time of the issuance of the attachment?"

This was set down for trial by jury, and the court ruled that the intervenors had the affirmative of the issue and that the burden of proof was upon them. To this ruling the intervenors objected and reserved an exception. After the evidence was in, the court instructed the jury to find a verdict for the plaintiff, and thereupon entered a judgment dismissing the petition.

*Mr. Chapman W. Maupin* for the appellants :

1. The trial court erred in that, after declaring that the issue in the case was as to whether the grounds of attachment stated in the plaintiff's affidavit existed, it held that the intervening creditors had the affirmative of that issue, and that the burden of proof was upon them. A debtor cannot virtually prefer a creditor by making no defence to an attachment when no grounds for attachment exist. Drake on Att., 7th Ed., Sec. 275, p. 263; 1 Wade on Att., Sec. 286, p. 547 ; Waples on Att., 2d Ed., Sec. 792 ; *Schilling* v. *Deane,* 36 Ill. App. 513; *Farwell* v. *Jenkins,* 18 Ill. App. 493; *Walker* v. *Roberts,* 4 Rich. L. (S. C.) 561; *Henderson* v. *Thornton,* 37 Miss. 448 ; *Davis* v. *Eppinger,* 18 Cal. 378.

2. The burden is on the plaintiff to establish the grounds of his attachment. Wade on Att., Sec. 281; Waples on Att., 2d Ed., Sec. 707, 708; Shinn on Att., Sec. 116, p. 174. The intervening creditors stand in the shoes of the defendant, and as against them as well as the defendant, the plaintiff must make out his case. *Speyer* v. *Ihmels,* 21 Cal. 280; *Bamburger* v. *Halberg,* 78 Ky. 376; 1 Shinn on Att., Sec. 437; *Dry Goods Co.* v. *Dry Goods Co.,* 37 S. W. Rep. 103.

It is true that the traverse of the intervening creditors in this case was directed to the plaintiff's cause of action rather than the grounds of attachment, but there is no distinction between the two cases. *Bateman* v. *Ramsay,* 74 Tex. 589.

In the most recent work on attachments the subject " Intervention " is fully and carefully treated, and it is there said that when the intervenor sets up ownership of the property attached the burden is on him to sustain his claim, but when the right to sue out the attachment is denied by the intervenor, the burden devolves upon the plaintiff to establish the grounds of his attachment. 1 Shinn on Attachment, Sec. 437 (1896,) and cases cited. This seems to be the rule, though the intervenors affirmatively allege fraud and collusion on the part of the plaintiff and the defendant. *Speyer* v. *Ihmels,* 21 Cal. 280; *Bamberger* v. *Halberg,* 78 Ky. 376; *Posey* v. *Underwood,* 1 Hill (S. C.), 262.

The only reason assigned by the plaintiff in the court below for requiring the intervening creditors in this case to prove a negative, was that the averments of the traversing affidavit filed by the intervenors, were made upon information and belief and not upon personal knowledge. The reason given is utterly fallacious. It is true that parties will not in some cases be put upon their defence, nor certain defences allowed, unless an affidavit upon personal knowledge is made. *Newman* v. *Hexter,* MacA. & M. 88. But the party having once been admitted to prosecute or defend,

the rule of evidence which imposes the burden of proof upon him who alleges the affirmative cannot be affected by the fact that the pleadings are or are not under oath. If it would be proper to require an affidavit upon personal knowledge, it should be required as a condition precedent to the intervention. It is obvious that such a requirement would put an end to interventions in cases of this kind, for the most that the intervening creditor or his agent can do, is to make affidavit to a negation upon information and belief. No one but the fraudulent and collusive defendant can make oath upon personal knowledge that he is not fraudulently disposing, nor about to dispose, of his goods. The whole object in permitting the intervention is to prevent collusion by requiring the plaintiff to prove that grounds for his attachment did, in fact, exist.

The court below appears to have proceeded upon the theory that the intervening creditors must be treated as plaintiffs in an independent proceeding, just as if they were complainants in the equity court attacking a fraudulent transfer by the defendants, and must be required to make out a complete case of fraud and collusion between the plaintiff and defendants, before the plaintiff is called upon to deny anything. There is absolutely no authority for any such position. The intervenors are admitted to defend in the name of the mute defendant. *Buckman* v. *Buckman,* 4 N. H. 319; *Clough* v. *Curtis,* 62 N. H. 409; *U. S. Express Co.* v. *Lucas,* 36 Ind. 361; *Speyer* v. *Ihmels,* 21 Cal. 280.

3. The jurisdiction of the court below to allow the intervention of the appellants is fully sustained by the authorities. Drake on Att., 7th Ed., Secs. 273, 276, 278; 1 Wade on Att., Sec. 54; Waples on Att., 2d Ed., Secs. 796, 798; Shinn on Att., Ch. "Intervention;" *Clough* v. *Curtis,* 62 N. H. 409; *Nenny* v. *Schuleter,* 62 Tex. 327; *Zadick* v. *Schafer,* 77 Tex. 501; *Schilling* v. *Deane,* 36 Ill. App. 513; *Walker* v. *Roberts,* 4 Rich. L. (S. C.) 571; *Moore* v. *Stege,* 93 Ky. 27. The only restrictions upon the right to intervene are that the inter-

venors must have an interest in the attached property by way of lien or otherwise; and that they cannot take advantage of mere technical defects and irregularities in the first attachment.

In the District of Columbia the right of any person having an interest in the attached property to appear and make defence to the attachment, has been asserted by the courts in many cases. *Matthai* v. *Conway,* 2 App. D. C. 45; *Robinson* v. *Morrison,* 2 App. D. C. 105; *Reynolds* v. *Smith,* 18 D. C. 27; *Wallace* v. *Maroney,* 6 Mackay, 221; *United States* v. *Howgate,* 2 Mackey, 408.

It is true that the case at bar is the first, so far as the reports show, in which this right has been claimed by, or accorded to, a subsequent execution or attachment creditor; but the interest of a junior execution creditor arising from his lien is not distinguishable in principle from an interest accruing in any other way, and as much entitles him to intervene as if he claimed to be the owner of the property attached.

*Mr. Leon Tobriner* for the appellee:

1. Whilst the courts of this District have, in several instances, permitted parties claiming title to property alleged to have been wrongfully taken, to intervene in attachment suits, no case has ever arisen in this jurisdiction where an alleged judgment creditor asserting no lien has sought to avail himself of the remedy by intervention for the purpose of contesting the right of another creditor who has by attachment proceedings obtained priority. The mere fact that a party is a judgment creditor of a defendant in an attachment proceeding, in which personal property has been levied upon, does not entitle him to intervene in that action for the purpose of contesting the attachment. He must go further and show a valid lien upon the property; this is the rule in those jurisdictions where junior creditors are permitted to question the validity of prior attachments, and in this respect there is no distinction between judgment and

attaching creditors. In all cases the attaching creditor is required to have a lien, and must at least aver that the attachment which he contests is prejudicial to his interests or rights. Drake on Att., Sec. 275; Waples on Att., Sec. 794; *Tira* v. *Smith,* 93 N. Y. 87, 90; *Hodgman* v. *Barker,* 128 N. Y. 601; *Scharff* v. *Chaffee,* 68 Miss. 641; *Everitt* v. *Manufacturing Co.,* 11 N. Y. Supp. 508; *Horn* v. *Water Co.,* 13 Cal. 62; *Noyes* v. *Brown,* 75 Tex. 458, 461; *Nenny* v. *Schulter,* 62 Tex. 327; *Adler* v. *Anderson,* 42 Mo. App. 189, 200.

The reason for requiring an intervenor in a case of this character to show a lien must be apparent. If he has no lien he is not prejudiced by the attachment proceeding. H is not entitled to contest simply for the sake of a contest. Without a lien he is a mere stranger, an interloper. There is no averment either in the petition or proof that the debtors had no other property than that attached, or that this property was insufficient to satisfy appellant's demand if subjected to a levy under their execution. *Non constat,* that there was other property:—*non constat* that the property attached would have been sufficient to satisfy all claims levied against it. Fraud unattended with injury can not be made the basis of an action either at law or equity.

2. An execution on judgment of a justice of the peace is not a lien on personalty, whilst in the hands of a constable; it only becomes such by levy. 12 Ency. L. & Eq. 478; Murfee Justice's Practice, Sec. 638. This has been the uniform opinion of the bar of this District for many years, and accepted as good law; it has never been questioned in this jurisdiction. See also *Harlan* v. *Mining Co.,* 10 Nev. 92.

In *Harlan* v. *Mining Co.,* 10 Nevada, 92, where the statute permitting intervention was similar to that of California, it is held that where the petition for intervention does not state facts sufficient for a recovery or relief for the intervenor, such defect, on the appeal of the intervenor, can be considered and the petition be treated the same as a complaint, which fails to state facts sufficient to constitute a cause of action.

3. In this case the appellants intervened under the allegations set forth in their petition purporting to be supported by the affidavit of their attorney. · This affidavit amounted to no verification whatever, as upon an examination it will be seen that had every allegation in the petition been absolutely false no charge of perjury could have been sustained against the affiant, who practically swore to nothing. The petition simply amounted to an averment, unsupported by oath or any proof.

This was not the ordinary case of a defendant in attachment filing an affidavit traversing the plaintiff's affidavits and presenting the issue whether there was just grounds for the attachment, as provided by the statute. The appellants sought intervention on the ground of collusion and fraud; this allegation imposed upon them the burden of proving such collusion. It can not be contended that having been permitted to intervene upon the allegation of this ground, they would be permitted to abandon it, and call upon the plaintiff in the first instance to make proof of his ground for attachment. Fraud was the gravamen of their charge, and the court had a perfect right, in the exercise of its discretion, to direct with whom under the condition of the pleadings the onus of proof should lie, and what evidence should first be adduced, and by whom. *Robinson* v. *Morrison*, 2 App. D. C. 105, 115.

4. The court below committed no error in dismissing the petition of intervention. The intervenors had no lien upon the property attached, and they utterly failed to prove the allegations in the petition as to fraud and collusion. *Lewis* v. *Harwood*, 28 Minn. 428.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. Before considering the case on the errors assigned, certain preliminary questions raised by the appellee in support of the judgment must be disposed of. As we have seen, there was no objection taken to the leave to file the petition

of intervention, and no demurrer thereto when filed. Now, for the first time, it is urged that the court had no power to permit or to entertain it.

Since a very early day, in Maryland, the right of one claiming title to, or an interest in, property that has been attached, to intervene in the cause and controvert the truth of the grounds of the attachment stated in the plaintiff's affidavit, has been firmly established. *Campbell* v. *Morris,* 3 H. & McH. 552; *Ranahan* v. *O'Neale,* 3 G. & J. 298, 301; *Stone* v. *Magruder,* 10 G. & J. 383, 386; *Carson* v. *White,* 6 Gill, 17, 26; *Clarke* v. *Meixsell,* 29 Md. 221, 227. The same practice has obtained in the Supreme Court of the District of Columbia, and has been repeatedly sanctioned by that court in General Term. *United States* v. *Howgate,* 2 Mackey, 408; *Wallace* v. *Maroney,* 6 Mack. 221, 223; *Reynolds* v. *Smith,* 18 D. C. 27. Twice since the organization of this court the right of intervention has passed unquestioned. *Robinson* v. *Morrison,* 2 App. D. C. 105, 120; *Matthai* v. *Conway,* 2 App. D. C. 45, 50. The point must now be regarded as settled.

It is true the intervenors in this case do not claim ownership of the property, but a lien thereon and superior right to subject it to the satisfaction of their judgment. We see no difference in principle, however, between the right of intervention of one who claims title to the property, and of one who asserts an interest through a lien by contract, or by operation of law under an execution or attachment. *Clarke* v. *Meixsell,* 29 Md. 221; *Buckman* v. *Buckman,* 4 N. H. 319; *Clough* v. *Curtis,* 62 N. H. 409; *Jacobs* v. *Hogan,* 85 N. Y. 243; Drake on Attachments, Secs. 273, 275.

2. It is further urged that the petition of intervention is fatally defective in that it does not sufficiently appear from its allegations that the defendants in attachment had no other property upon which intervenors might have levied their execution and obtained complete satisfaction. Had this objection been taken by demurrer and sustained, there would be no error in the dismissal of the petition. But how-

ever important the fact, it was not jurisdictional; and whilst its omission was a grave defect in the petition, it was one that could, and doubtless would, have been supplied by immediate amendment had attention been directed to it at the proper time. It would be unjust now to hold, regardless of any error that may have been committed on the trial, that the judgment must nevertheless stand because of that defect in the petition.

3. The next and last point offered in support of the judgment would be decisive if well taken. The right to intervene is founded on an interest in the attached property acquired by the issue, and delivery to an officer, of the execution. If there be no such interest the defect is incurable. The necessity of some interest in the property, by way of claim of title or lien, or superior right to satisfaction, is essential to the right of intervention. *Phillips* v. *Both*, 58 Iowa, 499, 502; *Scharff* v. *Chaffee*, 68 Miss. 641; *Tira* v. *Smith*, 93 N. Y. 87.

At common law, the lien of a *fi. fa.* dated from its *teste.* Freeman, Executions, Sec. 135. This was modified by the act of 29 Charles 2, Sec. 16, so as to make the lien (as against all but innocent purchasers for value, perhaps) date from the delivery of the writ to the proper officer for execution. That statute was in force in Maryland at the time of the cession of the territory of the District, and has not since been repealed. Comp. Stat. D. C., p. 222, Sec. 1; *Arnott* v. *Cooper*, 1 H. & J. 471; *Selby* v. *Magruder*, 6 H. & J. 454; *Furlong* v. *Edwards*, 3 Md. 99, 113.

Founded in the fact that courts of justices of the peace are not considered courts of record, there is some question whether executions therefrom bind the property under the act aforesaid from the time of delivery to the officer, or from the time of actual levy only. 12 Am. & Eng. Encyc. of Law, 478; Freeman, Executions, Sec. 199.

In the view that we have taken of the case, that question is of no practical importance and need not be decided. There

was no way in which the constable could have made an actual levy of intervener's writ upon the property. It had been seized by the marshal under the attachment, and was thereby put beyond the interference of any court or officer. *Hagan* v. *Lucas*, 10 Pet. 400; *Covell* v. *Heymen*, 111 U.S. 176. Whilst the writ might have been delivered to the marshal for execution (R. S. D. C., Sec. 912), the constable was the regular executive officer of the justice's court, charged by law with the execution of its process. R. S. D. C., Sec. 1038. Had the writ been delivered to the marshal himself, he could not have reseized the property and held it thereunder. There is no express provision of law requiring or authorizing him to endorse a subsequent execution as levied upon the property subject to the attachment, though he might probably be permitted to do so, in order to fix a right thereunder to claim the surplus after the discharge of the prior writ, or to contest its priority or validity.

The statute of Charles II aforesaid requires the officer to endorse upon each *fi. fa.* the date of its receipt, for the apparent purpose of determining its priority; but provides nothing further to be done in order to fix and retain its lien upon property that may have been seized under a prior writ.

For the purposes of this case, at least, the action taken by the intervenors should be regarded as the equivalent of an actual levy. Everything was done that could be lawfully done. The judgment was obtained and the writ issued and delivered to the regular officer of the court for execution. That officer could not take the property into his possession. All that he could do was to hold the writ, notify the marshal, perhaps, and remain in position to seize the property should the attachment be quashed, or its remainder, should a part only be required to discharge the prior writ. This we think was sufficient to authorize the judgment creditors to intervene and controvert the grounds of the attachment that bars the way to the enforcement of their execution.

4. This brings us to the consideration of the error assigned

by the appellant. Did the court err in requiring the inter-venors to assume the burden of proving that the grounds of the attachment were not true? The statute authorizes the issuance of an attachment at the commencement, or during the pendency, of a suit, upon an affidavit of the plaintiff alleging the existence of certain grounds, and "supported by the testimony of one or more witnesses." R. S. D. C., Sec. 782.

Upon compliance with this section the attachment is issued by the clerk as a matter of course. As has been said by this court: "The duty of the clerk is ministerial. He makes no inquiry into the truth or falsity of any facts stated in the affidavits. If they conform generally to the statute, and the undertaking is offered with satisfactory surety, he issues the writ at once." *Weiler* v. *Chock*, 4 App. D. C. 330.

The next section provides: "If the defendant, his agent or attorney, shall file an affidavit traversing the plaintiff's affidavit, the court shall determine whether the facts set forth in the plaintiff's affidavit are true, and whether there was just ground for issuing the writ of attachment; and if the facts do not sustain the affidavit, the court shall quash the writ of attachment or garnishment; and this issue may be tried by a judge at chambers on three days' notice." R. S. D. C., Sec. 783.

When the affidavit is traversed, the issue is to be tried, at the demand of either party, upon oral evidence. *Robinson* v. *Morrison*, 2 App. D. C. 105, 116. We think that by the natural and proper construction of the statute the burden, on that trial, is cast upon the plaintiff to prove the existence of the facts which justify the attachment. It does not say that the defendant shall disprove the facts alleged by the plaintiff, but that the court shall determine whether the facts alleged by the plaintiff are true, and shall quash his writ "if the facts do not sustain the affidavit."

The writ of attachment is a harsh and severe process, though necessary in many cases for the proper protection of

creditors. The right to have it is a privilege granted upon the alleged existence of certain facts. The affidavits required are *prima facie* sufficient to authorize the clerk to perform the ministerial act of its issuance; but this *prima facie* case is overthrown by the traverse under oath, and if the plaintiff offers no evidence to support the truth of his averments, his attachment will and ought to fail. The affirmative is upon the plaintiff, and to require the defendant to take the burden of establishing a negative is to reverse the natural order of pleading and proof. There is certainly no hardship in imposing upon the former the burden of maintaining the advantage obtained by his writ. Having knowledge of the facts sufficient to justify him in making affidavit of their existence, he ought to be prepared with some evidence to prove his charges. Where the intent to defraud is charged in general terms, the defendant often might not know how and with what evidence to prepare to disprove the charge until informed by plaintiff's evidence of the specific acts from which the inference had been drawn.

The conclusion that we have reached, after much consideration, is, in our opinion, not only sound in principle, but supported by many well considered decisions, which, when examined, will be seen, in so far as they may be influenced by statute at all, to be founded on provisions substantially like our own. *Wright* v. *Rambo,* 21 Gratt. 158, 162; *Oliver* v. *Wilson,* 29 Ga. 642, 645; *Coston* v. *Page,* 9 Ohio St. 397; *Talbot* v. *Pierce,* 14 B. Mon. 158, 164; *Hawkins* v. *Albright,* 70 Ill. 87; *Jones* v. *Swank,* 51 Minn. 285; *Ellison* v. *Tallon,* 2 Neb. 14; *Citizens' State Bank* v. *Baird,* 42 Neb. 219; *Wynn* v. *Wilmarth,* 1 S. Dak. 172; *Bamberger* v. *Halberg,* 78 Ky. 376.

The effect of the intervention was to make the intervenors virtually defendants to the writ of attachment. By virtue of their acquired interest in the property, they had acquired the same right that defendants had to traverse the affidavit for attachment. If that attachment was falsely

and wrongfully sued out, and defendants failed or refused to make defense to it, the intervenors had the right to do so in order to remove it as an impediment to their better right of seizure and sale in satisfaction of their execution. To this extent they were entitled to stand in the shoes of the defendants. *Campbell* v. *Morris*, 3 H. & McH. 553; *Clarke* v. *Meixsell*, 29 Md. 221. This situation illustrates, also, the reasonableness of the rule that imposes the burden of proof upon the plaintiffs, to sustain the attachment. If it were upon the intervenors, and especially in a case where there might be collusion between the plaintiff and defendant, their proceeding would rarely be productive of results.

It follows that the court erred in imposing the burden of proof upon the intervenors, and that the judgment must be reversed.

5. In respect of the charge of collusion, however, between the parties, the rule is different. That issue is separable from the other, and upon it the intervenors have the affirmative and must assume the burden of proof. If the facts warranting the attachment should not be proved, it would be quashed without regard to the question of collusion; for no plaintiff should have the benefit of an advantage obtained by false or reckless swearing, even if there has been no collusion, and the defendant simply remains indifferent to the charges against him. Even if proof should be made of conduct on the part of the defendants which, under ordinary circumstances, would justify attachment, the writ ought nevertheless to be quashed upon proof of fraudulent collusion between the plaintiff and defendant. If the facts were such as to bring the case within the provisions of the general assignment act (27 Stat. 474), such an attempt to give a preference would be as much within the prohibition of the statute as an attempt to accomplish the same end by private contract. Indeed, an attempt to use the process of the court for an unlawful purpose would be far more reprehensible.

For the error pointed out above, the judgment will be reversed, with costs to the appellants, and the cause remanded with direction to set aside the verdict and grant a new trial. It is so ordered.     *Reversed and remanded.*