# MONARCH LIFE INSURANCE COMPANY

v.

## Martha S. ELAM, Appellant.

### No. 89–7106.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 29, 1990.

Decided Nov. 9, 1990.

Richard S. Schrager, with whom Howard M. Rensin was on the brief, for appellant.

James L. Nolan, for appellee.

Before BUCKLEY, WILLIAMS, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Martha S. Elam sued Sonya Steele for personal injuries in federal district court here in the District of Columbia. On October 26, 1988, the parties arrived at a settlement under which Steele's insurer, Government Employees Insurance Company, agreed to pay Elam $19,000. This case concerns the validity and priority of competing claims to the proceeds of the settlement. The main contenders are Monarch Life Insurance Company, asserting an August 1988 judgment against Elam, and

Elam's attorney, claiming under a contingent fee agreement with Elam entitling him to one third of any recovery in the litigation against Steele.

On October 25, 1988, the day before the Elam/Steele settlement, Monarch filed a certified copy of its judgment with the federal district court in the District, where the Elam/Steele suit was pending. That court issued a writ of "Attachment on Judgment" the same day. On October 27, 1988, Monarch had its attachment served on Government Employees Insurance Company, Elam's debtor under the Elam/Steele settlement.

Monarch then filed a motion for judgment in condemnation of the attached property with the federal district court in the District, and Elam filed the sole opposition, asserting the claims of her attorney and of certain assignees. On March 21, 1989, the court entered an order and judgment granting Monarch's motion. Elam appeals.

District of Columbia law is unclear on two issues governing the status of the attorney's claim. Rather than resolve those issues ourselves, we certify them to the District of Columbia Court of Appeals.

\* \* \*

We must first dispose of claims raised by Elam on behalf of certain medical care providers [1] for whose benefit she had previously executed a series of "Assignment and Authorization" agreements. Under these agreements she authorized her attorney to pay from the proceeds of any recovery against Steele amounts equal to their charges for services in connection with her injury.[2] So far as appears, however, none of these assignees intervened or participated in any way in the attachment proceedings of the district court.

■ As to these possible claimants (but not as to Elam's attorney), Monarch argues that under District law Elam cannot assert others' interests in the property as a de-

---

1. It is unclear from the record whether Shelia Edwards, one of the assignees, was a medical care provider or simply a general creditor of Elam. Ms. Edwards's status does not, however, affect our analysis.

2. An exception is assignee Edwards, to whom a fixed sum was assigned.

fense. Although anyone claiming an interest in attached property has a right to intervene, *Daniels v. Solomon*, 11 App. D.C. 163, 171 (1897), a right now codified at D.C.Code Ann. § 16–554 (1981), the District of Columbia courts have held that a debtor whose bank accounts are attached cannot assert in defense that the funds are in fact held by the debtor as trustee for another. *Reynolds v. Smith*, 7 Mackey 27, 38 (D.C. 1888); *Gay v. Peoples Hardware Co.*, 221 A.2d 923, 924 (D.C.App.1966). "Such defense can be made only by intervention in the cause by the principal or *cestui que trust*." *Id.* at 924–25. Presumably the court believed that any enhanced protection for absent creditors was not enough to justify the delays and complications that would flow from allowing the debtor to raise such objections. In addition, it may have regarded it as unfair for the attaching creditor's claim to be jeopardized by that of an absent third party who would not be bound, i.e., could still claim the property, if the attaching creditor won. *Reynolds* and *Gay* involved bank accounts, but nothing in them suggests that the District rule would be different for other forms of indebtedness. Thus, Elam's defense that part of the attached debt is owned by others, or not by herself, must fail.[3]

\* \* \*

■ Elam argues that because Monarch's writ of attachment was issued the day before the Elam/Steele settlement, the garnishment was ineffective and void. It is true that the District of Columbia requires that a fund be "actually due and ascertainable in amount in order to be subject to condemnation." *Cummings General Tire Co. v. Volpe Constr. Co.*, 230 A.2d 712, 714 (D.C.App.1967). But § 16–546 of the D.C.Code, made applicable by Rule 69(a) of the Federal Rules of Civil Procedure, provides that "[a]n attachment shall be levied upon credits of the defendant, in the hands of a garnishee, by *serving* the garnishee with a copy of the writ of attachment...." D.C.Code Ann. § 16–546 (1981) (emphasis added). As Elam supplies no

argument for finding that Congress meant "issuance" of the writ of attachment when it spoke of "serving" it, we have no basis for looking beyond the apparently plain meaning of the statute. Thus, in the absence of any other claims of procedural defects, we find Monarch's garnishment of the settlement proceeds valid.

\* \* \*

■ This leads us to the claim of Elam's attorney, which raises issues we are unable to resolve at this time. As a preliminary matter, we note that the attorney filed no motion in his own name asserting a claim to the settlement proceeds. His claim was raised solely in Elam's motion. As the lawyer was present in fact throughout every stage of the proceedings below (though not as a named party), and as the claims against the settlement fund were so large that Elam has no real substantive interest in it, the lawyer might well be regarded as a de facto intervenor, and *Reynolds* and *Gay* would not apply. As Monarch did not raise the issue on appeal, however, we do not address it. *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983). Monarch's vague, arguable references to the point in the district court proceedings do not, of course, preserve the issue on appeal. See *id.* at 175–76.

Thus we reach Monarch's two central attacks on the attorney's asserted lien: first, that the language of the agreement creating the obligation is inadequate to support a lien, and, second, that even a valid lien could operate only against a judgment, not a settlement.

■ Charging liens in favor of attorneys rest on the judgment that as the recovery would not come into being without the lawyer's skill and effort, the lien is not only in the interest of claimants but in that of their creditors as well. See, e.g., *Cetenko v. United California Bank*, 30 Cal.3d 528, 179 Cal.Rptr. 902, 907, 638 P.2d 1299, 1304 (1982). Thus it can be viewed as an extension of the principle underlying a mechan-

---

3. We make no finding as to the validity of the assignments themselves or the strength of the assignees' claims to the settlement funds as

against Elam herself or against the other lien claimants.

ic's lien. See *Coughlin v. New York C. & H. R.R. Co.*, 71 N.Y. 443 (1877). Unlike many jurisdictions, see, e.g., Md.Bus.Occ. Code Ann. § 10–501 (1989); N.J.Stat.Ann. § 2A:13–5 (West 1987), the District of Columbia has no statute creating such a lien, see *Continental Casualty Co. v. Kelly*, 70 App.D.C. 320, 106 F.2d 841, 843 (1939). It does, however, recognize a common law lien. See, e.g., *Lyman v. Campbell*, 87 App.D.C. 44, 182 F.2d 700 (1950).

In return for her attorney's efforts in prosecuting her personal injury claim, Elam agreed to pay him "a sum equal to 33⅓% (⅓) of any sum I shall recover as a result of this accident." Monarch argues that this cannot create a "charging lien" in favor of the lawyer. The argument appears to have two elements. The first is Monarch's suggestion that such language fails to "clearly import an intention ... to make the fund liable for the attorney's fee." Brief for Appellee at 11. The second is an argument, seemingly derived from some policy notion rather than any inference of intent, that an agreement creating a personal right against the client can never create a charging lien. See Brief for Appellee at 10 (noting that the amount due "could conceivably come from other Elam funds, and not necessarily the actual money received from GEICO"). The two theories coalesce in Monarch's view that language such as that of Elam's agreement cannot create a charging lien.[4]

Monarch's argument relies principally on this court's 1914 decision in *Thurston v. Bullowa*, 42 App.D.C. 18 (1914). There the court, then the highest of the District,[5] held that an oral agreement for compensation in "an amount of at least equal to one third of what would be recovered ...", *id.* at 21, failed to create a charging lien. The court relied entirely on the seemingly inapposite case of *Nutt v. Knut*, 200 U.S. 12, 26 S.Ct. 216, 50 L.Ed. 348 (1906), which held that a similarly worded fee agreement, covering a claim against the United States, created a valid obligation in favor of the attorney even though it was invalid (under a statute) insofar as it *assigned* part of the claim against the United States. Nonetheless, if this were the end of the story, *Thurston* would probably require us to rule for Monarch.

Later District cases, however, raise a strong doubt as to whether the *Thurston* rule remains valid. In *Kellogg v. Winchell*, 51 App.D.C. 17, 273 F. 745 (1921), an attorney sought to intervene when his client attempted to dismiss the suit filed at the client's behest. The contingent fee agreement "provided that [the lawyer] was to receive for his services *a sum equal to* 50 per cent. of any amount obtained by his client." *Id.* at 18, 273 F. 745 (emphasis added). The D.C. Court of Appeals held that the contingent fee agreement vested the lawyer "with an interest in the cause of action" sufficient to support his intervention. *Id.* at 20, 273 F. 745. The court invoked a "trend of the modern decisions of the court ... to protect the right of the attorney to receive compensation for his services." *Id.* at 19, 273 F. 745. To explain finding a "grant" in the agreement's language, it said that "[w]hile there are no words of grant in the contract, it is a 'principle even of the common law that words of covenant may be construed as a

---

**4.** Both the subissues, the contract interpretation and the asserted public policy limit, are reviewable de novo. *Washington Metro. Area Transit Auth. v. Mergentime Corp.*, 626 F.2d 959, 961 (D.C.Cir.1980) (contract interpretation in the absence of extrinsic evidence); *Cross v. American Country Ins. Co.*, 875 F.2d 625, 627–28 (7th Cir. 1989) (public policy limitation).

**5.** In 1914 there were only two courts of general jurisdiction in the District of Columbia: the Supreme Court of the District of Columbia, a trial court, and the Court of Appeals of the District of Columbia, an appellate court. In 1948, following a series of name changes and enlargements and contractions of jurisdiction, the Supreme Court of the District of Columbia became the United States District Court for the District of Columbia, and the Court of Appeals of the District of Columbia became this court. In 1970 Congress limited the jurisdiction of these two courts to federal cases and created the Superior Court of the District of Columbia and the District of Columbia Court of Appeals as local courts of general jurisdiction. See District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L. No. 91–358, 84 Stat. 473 (1970), codified at D.C.Code Ann. § 11–101 et seq. (1981).

grant when they concern a present right.' " *Id.* at 19, 273 F. 745 (quoting *Barnes v. Alexander,* 232 U.S. 117, 121, 34 S.Ct. 276, 278, 58 L.Ed. 530 (1914) (Holmes, J.)). The court did not mention *Thurston.*

One could reconcile *Thurston* and *Kellogg* by stressing the difference between the attorney interest rejected in one and accepted in the other—a lien in *Thurston,* an interest sufficient to justify intervention in *Kellogg.* But the courts of the District have typically regarded the two issues as virtually interchangeable. In *Continental Casualty Co. v. Kelly,* 70 App.D.C. 320, 106 F.2d 841 (1939), for instance, where attorneys under a contingent fee agreement intervened in a lawsuit to enforce the lien they claimed the agreement created in the judgment, the court declared that "our decision in *Kellogg* ... determine[s] the principle which should control." *Id.* at 843. It then proceeded to find that the agreement "gave the attorney an interest in the cause of action," *id.,* and that this interest was a lien which, "even if ... inchoate before judgment [would then] take[ ] effect from the time of the commencement of the suit," *id.* Thus the court found an interest to support intervention and a lien, both apparently on the strength of *Kellogg.* See also *Friedman v. Harris,* 81 App.D.C. 317, 158 F.2d 187 (1946) (following *Continental Casualty* ). That the two interests should march arm-in-arm seems inevitable, as the right to intervene exists in order to enable the attorney to protect his interest in payment from the recovery. See *Continental Casualty,* 106 F.2d at 844; *Sullivan v. Tobin,* 42 App.D.C. 430, 435 (1914) (allowing attorney intervention to protect lien). Moreover, one would expect a court to be *more* hesitant to allow a discharged attorney to interfere in his client's pursuit of a case than it would be to recognize a lien on the resulting fund.

We note that the court in *Sullivan* observed that "[t]he [client's] obligation ... was definitely limited to payment out of the fund to be recovered in the suit.... A contract lien was *therefore* created in favor of [the attorneys]." 42 App.D.C. at 433 (emphasis added). The "therefore" might be taken to suggest that restriction to the fund is a prerequisite to creation of a lien, but we think the more natural reading to be simply that where there is clearly no right other than one against the fund, the agreement would be meaningless unless it established a lien on the fund. Monarch has offered no policy reason why parties should not be free to create both a right against the client and a lien.

The issue is of importance not only to members of the District bar, but also to their potential clients, especially indigent ones whose cases are less likely to be brought (or would be brought for a higher fee) if lawyers are put to a choice between a lien and a contract right. Because of the uncertain status of *Thurston* in the light of later cases, and its seemingly mechanical interpretive approach, we conclude that the adequacy of the quoted language to create a lien should be certified to the District of Columbia Court of Appeals.

The second unresolved question of District of Columbia attorney's lien law concerns whether a valid charging lien will attach to settlement proceeds over which a court is exercising control. Citing a handful of District cases, Monarch argues that the attorney's charging lien attaches only to the proceeds of judgment, never to settlement proceeds. *Falcone v. Hall,* 98 App.D.C. 363, 235 F.2d 860 (1956); *Lyman v. Campbell,* 87 App.D.C. 44, 182 F.2d 700 (1950); *Friedman v. Harris,* 81 App.D.C. 317, 158 F.2d 187 (1946); *Continental Casualty Co. v. Kelly,* 70 App.D.C. 320, 106 F.2d 841 (1939); *Pink v. Farrington,* 67 App.D.C. 314, 92 F.2d 465 (1937); *Thurston v. Bullowa,* 42 App.D.C. 18 (1914).

Of these decisions only *Thurston* and *Lyman v. Campbell* can be said to have addressed the issue of settlement at all, and both of them in a context, which each court emphasized, where the settlement produced no fund on which the court could impose a lien. In *Thurston* the settlement had established an amount due the plaintiff, who had then wrongfully assigned his claim under the settlement to a third party. The court noted: "No judgment was entered and no money paid into court as the result of the compromise; hence there was

nothing against which an attorney's lien could be enforced." 42 App.D.C. at 23. Here, of course, there is a fund over which the court has exercised control; to the extent that judicial control is the deciding factor, *Thurston* is inapposite. In any event, that portion of the *Thurston* opinion is dictum, as the court earlier decided that the fee agreement created no charging lien. *Id.* at 21–23.

In *Lyman v. Campbell* the parties settled the underlying lawsuit, and the defendant U.S. Treasury issued the plaintiff a check which he then endorsed and returned to the Treasury in partial satisfaction of an income tax claim. 182 F.2d at 701. The court noted that no funds "ever [came] into the court's possession over which it could conceivably exercise equitable control," and that it knew of no case affording an attorney relief "where settlement has been effected *through set-off,* prior to the obtaining of a judgment or decree." *Id.* at 702 (emphasis added). Here there has been no set-off, and it is evidently not disputed that the funds are within the control of the court.

The other cases, not focussing in the least on the settlement/judgment distinction, appear to have referred to the lien maturing at judgment only because that is the classic end of a lawsuit. In *Falcone v. Hall,* for example, the court held that the attorney has an "interest in the cause of action," 235 F.2d at 862, and said that one with such an interest would have "an interest in the judgment into which the cause of action merges." *Id.* The lawyer's interest could, with the same logic, extend to settlement proceeds. None of the other cases cited by Monarch appears to address the issue at all.

Other than the point of judicial control, none of Monarch's arguments or cases reveals any difference between settlement and judgment funds that would warrant a distinction in the application of an attorney's charging lien. The justification underlying the lien—enabling parties to pursue their legal claims—would appear to apply equally to both. Indeed, drawing the distinction asserted by Monarch would skew the incentives of attorneys representing indigent clients, at the possible expense of both the clients themselves and the legal system more generally. For example, the increase in probability of compensation from a judgment (and the resulting perfected lien) might incline a lawyer to take a claim to trial even though the client's interests favored settlement, or, at a minimum, to incur the costs of embedding the settlement in a judgment.

\* \* \*

In the absence of controlling precedents we therefore certify the following questions of District of Columbia law to the District of Columbia Court of Appeals:

1. Under District of Columbia common law, does a contingent fee agreement between an attorney and his client which sets contingent compensation at "a sum equal to" a portion of any recovery on the client's cause of action create an attorney's charging lien in favor of the attorney?

2. Under District of Columbia common law, does a validly created attorney's charging lien attach to the proceeds of settlement when the settlement fund out of which the attorney seeks payment is within the possession or control of the court?

This court's opinion, together with copies of the briefs submitted on appeal, are transmitted herewith to the District of Columbia Court of Appeals.

Upon receipt of a response to the certified questions, this court will determine the priority of the valid, properly asserted liens on the Elam/Steele settlement fund in accordance with the District of Columbia rule of lien priority—"first in time, first in right." *District of Columbia v. Franklin Investment Co.,* 404 A.2d 536, 540 (D.C. App.1979); *Rankin & Schatzell v. Scott,* 25 U.S. 177, 179, 6 L.Ed. 592 (1827).

*So ordered.*