**The VISIONS FOUNDATION, INC., Appellant,**

v.

**FALCON COLOR, INC., Appellee.**

**No. 91–CV–869.**

District of Columbia Court of Appeals.

Submitted April 16, 1992.
Decided April 28, 1992.

Gerald Bruce Lee, Alexandria, Va., was on the brief, for appellant.

Lawrence S. Jacobs, Rockville, Md., was on the brief, for appellee.

Before ROGERS, Chief Judge, and FERREN and FARRELL, Associate Judges.

FERREN, Associate Judge:

Appellant Visions Foundation, Inc., (Visions) is the publisher of *American Visions*, a magazine. Appellee Falcon Color, Inc. (Falcon) provided the magazine with color separations for use in the process of four color printing for a period from May 1988 through March 1990. When Visions failed to pay Falcon for its services, Falcon filed suit in the Superior Court on October 1, 1990, demanding that Visions pay $17,-690 plus interest and costs. Visions failed to answer Falcon's complaint, and Falcon accordingly obtained a default judgment on November 20, 1990.

Falcon obtained a writ of attachment seizing funds owed to the magazine by Chrysler Corporation, which advertised in *American Visions*. Chrysler, according to appellees, admitted that it owed the maga-

zine $10,263.75. Visions moved to quash the writ of attachment, asserting that Visions did not own the magazine and therefore was not entitled to the advertising revenues Chrysler owed. Visions asked the court to release the attached funds instead to Warwick Communications, Inc. (Warwick), which, according to Visions, owned the funds.[1]

Falcon opposed the motion to quash the writ, arguing that Visions had no standing to raise the ownership issue and arguing, further, that if Warwick owned the advertising revenues, the financial arrangement was fraudulent as to Visions' creditors. On July 11, 1991, the trial court denied without a hearing Visions' motion to quash the writ.

Visions appeals the trial court's ruling, contending that the court erred in failing to determine actual ownership of the attached funds. Visions argues that it properly raised the ownership issue when it filed its motion to quash the writ, and that the trial court was required to hold a hearing to resolve the issue. Visions further argues that it should have been given an opportunity to defend the allegation that its financial arrangement with Warwick was fraudulent as to creditors. We affirm.

■ Visions' argument rests on D.C.Code § 16–551 (1989), which provides:

A garnishee or stranger to the action **who may make claim to the property attached** may file an answer defending against the attachment. The answer may be considered as raising an issue without any reply, and any issue of fact thereby made may be tried with a jury if any party so desires.

(Emphasis added.)[2] The statute, however, plainly limits the right to assert a defense in a garnishment action to any party "who may make claim to the property attached." *Id.* In its motion to quash the writ of attachment, Visions admits it is not within

that category. It asserts that the *American Visions* advertising revenue belongs to Warwick, not to Visions. Visions cannot have it both ways: it cannot assert ownership of the funds in order to obtain a hearing under § 16–551, but then defend against the attachment by asserting that it does not own the same funds.

Warwick also was served with a writ of attachment to which it responded.[3] The writ listed as the defendant "The Visions Foundation, Inc., d/b/a American Visions." Warwick, therefore, was aware that Falcon was attempting to attach debts owed to Visions and to the magazine. Warwick could easily have intervened in the action between Falcon and Chrysler as "a stranger to the action who may make claim to the property attached" under D.C.Code § 16–551, and thus could have obtained a trial on the issue of who owned the funds had it wished to do so. "This right of intervention is well settled, with the only restriction that the intervener must have an interest in the attached property by way of lien or otherwise, or by claim of title to the property." *Gay v. Peoples Hardware Co.*, 221 A.2d 923, 925 (D.C.1966).

■ Visions, for its own part, admits that it has no such interest or claim. Absent any interest in the funds, Visions similarly is barred not only from filing an answer under § 16–551 but also from filing any pleading in the garnishment action under a related statute, D.C.Code § 16–554 (1989), which provides:

Any person may file his [or her] motion and affidavit in the cause, at any time before the final disposition of the property attached ... **setting forth a claim thereto or an interest in or lien upon the same.** The court, without other pleadings, shall try the issues raised by the claim, with a jury if either party so requests, and may make all orders neces-

---

1. Falcon also served a writ of attachment on Warwick, which answered by denying it was indebted to Visions.

2. Although Visions purported to rely on D.C.Code § 16–520, that statute applies to prejudgment attachment of property. The related statute applicable to post-judgment attachment is D.C.Code § 16–551.

3. Apparently Warwick responded to the interrogatories served with the writ, denying that it was indebted to Visions.

sary to protect any rights of the claimant.

(Emphasis added.) In *Monarch Life Ins. Co. v. Elam*, 286 U.S.App.D.C. 396, 918 F.2d 201 (1990), a judgment creditor (Monarch) attached the proceeds of a settlement between Elam, the plaintiff in a personal injury suit, and the defendant's insurer. Only Elam opposed the attachment, purporting to assert, among other things, the rights to the funds of medical care providers to whom she had assigned her own interest in the settlement proceeds. None of the assignees intervened or participated, although the court indicated that any one of them could have under D.C.Code § 16–554. *Id.* at 397–98, 918 F.2d at 202–03. Although it made no finding as to the validity of the assignments or the strength of the assignees' claims to the settlement funds, *see id.* at 398 n. 3, 918 F.2d at 203 n. 3, the United States Court of Appeals for the District of Columbia Circuit, citing *Gay*, held that Ms. Elam, as the assignor, could not assert the rights of the assignees to the funds. The court stated: "Elam's defense that part of the attached debt is owned by others, or not by herself, must fail." *Id.* at 398, 918 F.2d at 203.

The decision in *Putman & Putman v. Capitol Warehouse*, 775 S.W.2d 460 (Tex. Ct.App.1989), cited by Visions to establish the right to a hearing, is not to the contrary. In *Putman*, the garnishee's answer had raised doubts about the ownership of the funds it held for the judgment debtor, averring that Putman & Putman, a law firm, claimed an unspecified interest in the money. *Id.* at 461–62. Moreover, Putman & Putman had intervened in the garnishment action to assert its own interest in the funds. *Id.* at 462. For those reasons, the *Putman* case proceeded to trial.[4] In the present case, however, Chrysler's answer raised no question about the ownership of its debt to Visions, and Warwick did not intervene to assert its alleged interest. Because a judgment debtor who cannot assert an interest in the subject property is not a proper party at a postjudgment attachment proceeding under D.C.Code §§ 16–551, –554, we conclude that there was no issue properly before the court on which it should have held a hearing.[5]

*Affirmed.*

---

4. In *Putman,* the Texas Court of Appeals reversed on the ground that the trial judge had erroneously allocated the burdens of proof. *See id.,* 775 S.W.2d at 464.

5. Falcon's assertion that the financial arrangement between Visions and Warwick was fraudulent as to creditors was not a claim for relief. Visions, therefore, had no "right" to defend against it on this complaint.