**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 8, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

NANCY STARK, as Legal Guardian and
Mother of Jill Finley, an incapacitated
person,

     Plaintiff - Appellant,

v.

RELIANCE STANDARD LIFE
INSURANCE COMPANY,

     Defendant - Appellee.

No. 24-6137

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:23-CV-00967-PRW)**
_____

Gerald E. Durbin, II, and Marcus Glen Mullins, Durbin, Larimore & Bialick, Oklahoma
City, Oklahoma, for Plaintiff-Appellant.

Joshua Bachrach, Wilson Elser Moskowitz, Edelman & Dicker, Philadelphia,
Pennsylvania (Leasa M. Stewart, GableGotwals, Oklahoma City, Oklahoma, with him on
the brief), for Defendant-Appellee.
_____

Before **MATHESON**, **EBEL**, and **CARSON**, Circuit Judges.
_____

**CARSON**, Circuit Judge.
_____

     Congress enacted the Employee Retirement Income Security Act ("ERISA") to

protect employee-benefit-plan participants and their beneficiaries by authorizing civil

suits for ERISA violations.  Here, Defendant Reliance Standard Life Insurance Company terminated Jill Finley's long-term-disability-insurance coverage.  Although Defendant later reversed its decision and reinstated Finley's benefits, Plaintiff Nancy Stark, Finley's legal guardian, filed suit against Defendant contending that ERISA entitles Finley to a surcharge for the financial harm Defendant's wrongful disability-benefits termination caused Finley.  In her complaint, Plaintiff also alleged that Defendant breached its fiduciary duty to provide internal records for her appeal and that under Finley's insurance policy, it wrongfully deducted the amount she received from social security payments from her monthly disability payments.  The district court granted Defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

In May 2007, thirty-one-year-old Jill Finley suffered a sudden death cardiac arrest resulting in a hypoxic brain injury.  At the time, Finley worked as a mortgage underwriter for Provident Funding Associates, LP, but the injury left her totally disabled and unable to work.  Provident Funding Associates provided long term disability insurance to its employees through Defendant Reliance Standard Life Insurance, so in June 2007, Finley filed a claim with Defendant for coverage.  Finley included in her claim a physician's statement stating that she was "unable to return to work of any kind at this time" because of her brain injury.

Defendant approved Finley's claim in January 2008, stating that she retroactively would receive benefits due from August 2007 to December 2007 and

2

that it would need additional information to support disability benefits beyond December 2007.  In the letter approving her claim, Defendant also stated that if she expected her "illness or injury" to prevent her "from performing substantial work activity for a period not less than twelve (12) months, it may be in [her] best interest to apply for Social Security Disability (SSD) benefits."  It continued:

> Under certain circumstances, your group policy allows us to deduct an estimate of the amount of the SSD benefit that you may be eligible to receive (see the applicable policy for details).  As it is questionable whether or not your particular illness or injury will prevent you from performing substantial work activity for a period of 12 months, we will not reduce your monthly benefit by an estimated SSD benefit amount at this time. However, should further documentation suggest that you[r] illness or injury will prevent you from performing substantial work activity for a period of 12 months, future [long term disability] benefits payable by Reliance Standard Life Insurance Company may be reduced by an estimated SSD benefit amount.

Defendant's internal Claims Department Administrative Procedure Manual states that "[u]nder the typical [long term disability] policy, no insured is required to file a claim for Social Security benefits."  But, it continues, "it is often in their best interest to do so."

In a February 2008 letter, Defendant informed Finley that it would begin deducting her estimated SSD from her monthly benefit payments in accordance with the Benefits Provisions section of her long-term-disability-insurance policy.  The Benefits Provisions describes how Defendant calculates an insured's monthly payable amount.  It states that Defendant will pay an insured a monthly amount offset by an insured's "Other Income Benefits" such as "disability or Retirement Benefits under the United States Social Security Act" which "an Insured is eligible to receive

3

because of his/her Total Disability or eligibility for Retirement Benefits."  It also

states that:

> The Monthly Benefit will be reduced by the estimated amount.  If benefits
> have been estimated, the Monthly Benefit will be adjusted when we receive
> proof:
>
> (1) of the amount awarded; or
>
> (2) that benefits have been denied and the denial cannot be further appealed.
>
> If we have underpaid the Monthly Benefit for any reason, we will make a
> lump sum payment.  If we have overpaid the Monthly Benefit for any reason,
> the overpayment must be repaid to us.

The policy also clarifies that the monthly payment "will stop on the earliest of . . . the

date the Insured ceases to be Totally Disabled . . . or the date the Insured fails to

furnish the required proof of Total Disability."

The next month, Finley's guardian asked Defendant to waive the estimated

SSD deduction from her long-term-disability payments because of financial hardship.

The long-term-disability policy itself does not include a waiver provision, but under

Defendant's Claims Department Administrative Procedure Manual, Defendant can

waive the offset for estimated SSD benefits in certain circumstances, including

financial hardship.  Defendant agreed to waive the estimated SSD deduction while

Plaintiff's SSD application was pending.

In December 2009, an administrative law judge found that Finley had been

totally disabled since May 26, 2007 and was entitled to SSD benefits starting

November 2007.  In March 2010, Defendant sent Finley a letter stating that because

she started receiving SSD payments of $1,034.00 per month, it had overpaid her by

4

$27,676.73 because its payments under the policy "should have been reduced by [her] monthly income from [ ] the SS Administration." The letter explained that once Finley reimbursed Defendant for overpayment, her monthly long term disability benefit would be $966.21—the amount she would have received from Defendant minus the amount she received from SSD.

For the next several years, Defendant kept paying Finley long-term-disability payments, and Defendant periodically reviewed Finley's claim to ensure Finley remained totally disabled. In April 2022, Defendant terminated Finley's benefits, stating that recent testing did not support that she was totally disabled. Finley's guardian hired attorneys and submitted an administrative appeal, contending that Defendant's termination was erroneous as Finley was still totally disabled.

On January 23, 2023, Defendant reinstated Finley's long-term-disability benefits. Through counsel, Finley requested that Defendant pay "attorney fee[s] and cost for having to pursue the re-instatement of her [long-term-disability] benefits." Defendant responded and declined the request, stating it was not required to pay attorney's fees. Finley petitioned Defendant for financial-hardship relief and reimbursement for the "SSD offsets it has deducted from [Finley's long-term-disability] benefits since 2008." Defendant responded that based on Finley's policy, the SSD offset is "both correct and appropriate" and that under the policy, it "must subtract SSD benefits from the Benefit Amount." Defendant also stated that the "policy does not provide a provision which allows [it] to accommodate financial hardship requests."

5

On October 24, 2023, Finley's legal guardian filed suit against Defendant in the United States District Court for the Western District of Oklahoma, alleging three claims for relief under ERISA: first, benefits pursuant to 29 U.S.C. § 1132(a)(1)(B); second, breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3) for failing to administer the plan in accordance with applicable law; and third, breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3) for failing to inform and providing misleading communications.  Finley's complaint also seeks reimbursement of all attorney's fees and costs incurred during her administrative appeal.  Defendant moved to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6) and on June 14, 2024, the district court granted Defendant's motion.  Finley, through her legal guardian, brings three issues on appeal.  First, Plaintiff argues that she alleged plausible claims for equitable relief under 29 U.S.C. § 1132(a)(3) for the costs she incurred to submit an administrative appeal and successfully reinstate her disability payments.  Second, she argues that Defendant's SSD offset violated its own internal policies, the terms of her policy, and breached its fiduciary duties.  Third, Plaintiff contends that she plausibly alleged concrete harm resulting from Defendant's breach of fiduciary duty.  We address these issues in turn.

II.

A complaint's legal sufficiency is a question of law, so we review de novo a district court's decision on a Rule 12(b)(6) motion for dismissal for failure to state a

6

claim.[1] Waller v. City & Cnty. of Denver, 932 F.3d 1277, 1282 (10th Cir. 2019). Our task is to "assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991)).

### III.

Plaintiff first contends that she plausibly claims relief under 29 U.S.C. § 1132(a)(3) because ERISA enables plan-participant plaintiffs to bring a civil action to "obtain other appropriate equitable relief (i) to redress [ ] violations [of their rights under the terms of the employee benefit plan] or (ii) to enforce any provisions of this subchapter or terms of the plan." According to Plaintiff, a surcharge allowing her to recover the attorney's fees she incurred through her administrative appeal is an equitable remedy available under § 1132(a)(3).

ERISA provides that a participant or beneficiary of an employee-benefit plan may bring an enforcement action in various contexts: for example, when a plan fails to provide certain required information and annual financial reports to a plan

---

[1] Defendant incorrectly suggests the standard of review is abuse of discretion. Although we review a district court's ruling on attorney's fees under ERISA for abuse of discretion, Gordon v. U.S. Steel Corp., 724 F.2d 106, 108 (10th Cir. 1983), here the district court denied Plaintiff attorney's fees because it determined ERISA's § 1132(a)(3) did not permit a plaintiff to recover attorney's fees branded as equitable relief—a legal determination we review de novo. The district court dismissed Plaintiff's two other claims holding she had not stated a claim upon which relief may be granted, a legal determination that also gets de novo review. Center for Biological Diversity v. Norton, 262 F.3d 1077, 1080 (10th Cir. 2001) (citing Vibra-Tech Eng'rs, Inc. v. United States, 787 F.2d 1416, 1418–19 (10th Cir. 1986)).

participant or beneficiary under § 1132(a)(1)(A); "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan" under § 1132(a)(1)(B); and "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan" under § 1132(a)(3).  "ERISA specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims."  Varity Corp. v. Howe, 516 U.S. 489, 512 (1996).

The Supreme Court has referred to § 1132(a)(3) as the "catchall provision" because it functions as a "safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy."  Varity, 516 U.S. at 512.  The Supreme Court has clarified that in ERISA suits, the remedies available to a district court are "the remedies available to those courts of equity [that] were traditionally considered equitable remedies."[2]  CIGNA Corp. v. Amara, 563

---

[2] We stated in Teets v. Great-West Life & Annuity Insurance Co. that "the fact that . . . relief takes the form of a money payment does not remove it from the category of traditionally equitable relief."  921 F.3d 1200, 1224 (10th Cir. 2019) (quoting CIGNA Corp. v. Amara, 563 U.S. 421, 441 (2011)).  Circuits are split, however, as to whether courts may award compensatory "make-whole" monetary relief for a fiduciary breach in the form of a surcharge under § 1132(a)(3), Amara, 563 U.S. at 1880, or whether equitable monetary relief must be "directed against some specific thing . . . rather than a right to recover a sum of money generally out of the defendant's assets," Montanile v. Board of Trs. of Nat'l Elevator Indus. Health Benefit Plan, 577 U.S. 136, 145 (2016) (citing 4 S. Symons, Pomeroy's Equity Jurisprudence § 1234, p. 694 (5th ed. 1941)).

U.S. 421, 440–42 (2011) (citing Second Restatement § 199; J. Adams, Doctrine of Equity: A Commentary on the Law as Administered by the Court of Chancery 61 (7th Am. ed. 1881)).  The surcharge remedy, in particular, "extend[s] to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary."  Id. at 442.

Plaintiff seeks to recover the costs of successfully appealing the termination of her long-term-disability benefits.  She contends that ERISA obliges Defendant to make her whole for the attorney's fees and costs she incurred from Defendant's fiduciary breaches.  She argues that § 1132(a)(3)'s catchall provision allows courts to award "appropriate make-whole relief" to plaintiffs in the "the amount [they] incurred in attorney's fees."

---

All but one circuit court to consider the issue concluded that the Supreme Court's Amara decision authorizes "monetary remedy against a trustee, sometimes called a 'surcharge,'" as an "exclusively equitable" remedy available under § 1132(a)(3).  See Sullivan-Mestecky v. Verizon Commc'ns Inc., 961 F.3d 91, 102 (2d Cir. 2020); Gearlds v. Entergy Servs., Inc., 709 F.3d 448, 452 (5th Cir. 2013); Kenseth v. Dean Health Plan, Inc., 722 F.3d 869, 891–92 (7th Cir. 2013); Silva v. Metropolitan Life Ins. Co., 762 F.3d 711, 725 (8th Cir. 2014); Gabriel v. Alaska Elec. Pension Fund, 773 F.3d 945, 962–63 (9th Cir. 2014); Gimeno v. NCHMD, Inc., 38 F.4th 910, 914–15 (11th Cir. 2022).  See generally Menkes v. Prudential Ins. Co. of Am., 762 F.3d 285, 296 n.11 (3d Cir. 2014); Rochow v. Life Ins. Co. of N. Am., 780 F.3d 364, 375 (6th Cir. 2015).  The Fourth Circuit, in contrast, held that the surcharge discussion in Amara was dicta, and that the Supreme Court's later Montanile decision reinstated the pre-Amara view of § 1132(a)(3) that compensatory monetary relief in the form of a surcharge does not constitute an equitable remedy. Rose v. PSA Airlines, Inc., 80 F.4th 488, 499–504 (4th Cir. 2023), cert. denied, 144 S. Ct. 1346 (2024).  But, because we ultimately affirm the district court's ruling that pre-litigation attorney awards are unavailable under ERISA, we need not resolve this issue.

9

We disagree.  Along with providing for private enforcement actions, ERISA contains a limited fee-shifting provision in § 1132(g).  In relevant part, it states: "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  § 1132(g)(1).  We have not yet defined the contours of this provision, but several of our sister circuits have considered when attorney's fees are recoverable in an ERISA action.  All seven circuits to consider the issue have concluded that § 1132(g)(1) does not authorize awards for work done in pre-litigation administrative proceedings.  See Peterson v. Cont'l Cas. Co., 282 F.3d 112, 121 (2d Cir. 2002); Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300, 313 (3d Cir. 2008); Rego v. Westvaco Corp., 319 F.3d 140, 150 (4th Cir. 2003); Anderson v. P&G, 220 F.3d 449, 452 (6th Cir. 2000); Parke v. First Reliance Standard Life Ins. Co., 368 F.3d 999, 1011 (8th Cir. 2004); Cann v. Carpenters' Pension Tr. Fund for N. California, 989 F.2d 313, 315–16 (9th Cir. 1993); Kahane v. UNUM Life Ins. Co. of Am., 563 F.3d 1210, 1214–15 (11th Cir. 2009).  These circuits reason that when drafting ERISA, "Congress chose the words, '[i]n any action . . . attorney's fee and costs of action,'" and the "word 'action' in its usual legal sense means 'a suit brought in a court; a formal complaint within the jurisdiction of a court of law,' and 'includes all the formal proceedings in a court of justice attendant upon the demand of a right . . . in such court . . . .'"  Cann, 989 F.2d at 316 (citing Black's Law Dictionary 26 (5th ed. 1983)); see also Peterson, 282 F.3d at 119–20; Hahnemann, 514 F.3d at 313; Parke, 368 F.3d at 1010.  The "ERISA section on civil enforcement uses 'action' in this way

10

where it gives district courts exclusive jurisdiction 'of civil actions under this subchapter,' and refers to an 'action' brought in a district court." Cann, 989 F.2d (citing 29 U.S.C. § 1132(e)).

Some circuits have also highlighted that Congress enacted ERISA to promote "'the soundness and stability of plans with respect to adequate funds to pay promised benefits.'" Id. at 317 (quoting 29 U.S.C. § 1001(a)). Holding that plaintiffs may recover pre-litigation fees encourages plans to pay "questionable claims in order to avoid liability for attorneys' fees," and this incentive could "reduce the [plans'] 'soundness and stability.'" Id. And because the "validity of a particular claim is not always immediately obvious, plans may need to challenge those which the trustee in good faith believes are invalid without expanding its risk by a double or nothing bet on attorneys' fees." Id.; see also Rego, 319 F.3d at 150.

We agree with our sister circuits' reasoning that under § 1132(g), attorney's fees are unavailable for pre-litigation administrative proceedings. And as such, ERISA does not entitle Plaintiff to attorney's fees under § 1132(g) because Plaintiff successfully appealed the termination of her long-term-disability benefits before litigation began in district court.

Plaintiff maintains she does not seek attorney's fees under § 1132(g) but rather under § 1132(a)(3) in the form of an equitable surcharge. And according to Plaintiff, § 1132(g) grants courts wide enough "leeway to fashion appropriate make-whole equitable relief" which would cover the attorney's fees she incurred successfully appealing her benefits.

11

She cites Castillo v. Metro. Life Ins. Co., 970 F.3d 1224, 1230 (9th Cir. 2020) in support. Like Plaintiff here, the plaintiff in Castillo sought an award of attorney's fees under § 1132(a)(3)'s catchall provision in the form of an equitable surcharge after successfully reinstating his long-term-disability benefits through an administrative appeal. 970 F.3d at 1229–30. The Ninth Circuit agreed with the plaintiff that if other ERISA provisions did not adequately remedy a plaintiff's injury and afford "make-whole relief" for the attorney's fees they incurred while reinstating their benefits, they "may proceed under § 1132(a)(3)." Id. But importantly, the Castillo court noted that the plaintiff's arguments under § 1132(a)(3) could only "carry [his] claim so far" because they "do not adequately account for two factors that counsel against an award of attorney's fees—our decision in Cann and our obligation to read § 1132(a)(3) in conjunction with § 1132(g)." Id. at 1230.

The court explained that § 1132(g) "expressly addresses" attorney's fees, affirmatively authorizing them in the context of civil actions "while making no mention of fees incurred in the administrative proceedings mandated by the statute." Id. at 1232. Under the "maxim of *expressio unius est exclusio alterius*, [ ] a presumption [exists] 'that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions,'" and the circumstances here, the court continued, supported such an inference. Id. (quoting Copeland v. Ryan, 852 F.3d 900, 907 (9th Cir. 2017)). Moreover, under the rules governing attorney's fees, "Congress must provide a sufficiently 'specific and explicit' indication of its intent to overcome the American Rule's presumption

12

against fee shifting," and here, Congress omitted any reference to fees incurred in administrative proceedings. Id. (quoting Peter v. Nantkwest, Inc., 589 U.S. 23, 30 (2019)). These determinations persuaded the court "that § 1132(a)(3) does not authorize an award of attorney's fees incurred during the administrative phase of the ERISA claims process." Id. at 1232–33.

We agree with the Castillo court that because pre-litigation attorney's fees are unavailable for ERISA plaintiffs, § 1132(a)(3) does not authorize a court to grant pre-litigation attorney's fees to plaintiffs in the form of an equitable surcharge. This is the most reasonable conclusion when reading § 1132(a)(3) and § 1132(g) in conjunction—allowing a backdoor route to pre-litigation attorney's fees in the form of equitable relief when ERISA's fee shifting provision excludes pre-litigation attorney's fees makes little sense. Because the equitable surcharge Plaintiff seeks under § 1132(a)(3) is essentially pre-litigation attorney's fees, we affirm the district court's holding that Plaintiff has not alleged a plausible claim for relief under § 1132(a)(3).

IV.

Plaintiff next claims that she alleges a plausible claim for relief under § 1132(a)(1)(B) for reimbursement of the SSD-offset deductions Defendant subtracted from her monthly benefit. She maintains that under her long-term-disability policy, Defendant could not deduct the amount she received in SSD from her monthly benefits. According to Plaintiff, the offset violates the terms of her policy, Defendant's internal procedure, and breaches Defendant's fiduciary duties

under § 1132(a)(3). Alternatively, Plaintiff contends, the policy language discussing the offset—specifically, what it means to "elect" benefits—is ambiguous and that we should construe it against Defendant.

We need not address the merits of Plaintiff's claim for reimbursement of the SSD offset, because these claims are time-barred and waived. In March 2010, Defendant sent Finley a letter explaining the SSD offset and her right to appeal under ERISA. In the letter, Defendant explained that under the terms of her long-term-disability policy, it could reduce her monthly long-term-disability-benefit payment by the amount she received or was entitled to receive as a result of her disability, and it stated that after the SSD offset, her monthly benefit would be $966.21. The letter also stated that she "could request a review of this determination" by submitting her request in writing within 180 days along with "any reasons why [she] feel[s] the determination is incorrect." Plaintiff never requested a review of Defendant's SSD-offset determination during the 180-day window nor any time before April 10, 2023. In fact, Plaintiff did not respond to Defendant's contentions that Plaintiff failed to exhaust her administrative remedies.

ERISA contains no explicit exhaustion requirement, but we have held that "exhaustion of administrative (i.e., company or plan-provided) remedies is an implicit prerequisite to seeking judicial relief." Whitehead v. Okla. Gas & Elec. Co., 187 F.3d 1184, 1190 (10th Cir. 1999) (quoting Held v. Manufacturers. Hanover Leasing Corp., 912 F.2d 1197, 1206 (10th Cir. 1990)). This prerequisite "derives from the exhaustion doctrine permeating all judicial review of administrative agency

14

action[] and aligns with ERISA's overall structure of placing primary responsibility for claim resolution on fund trustees." Id. (quoting McGraw v. Prudential Ins. Co. of Am., 137 F.3d 1253, 1263 (10th Cir. 1998)). Without it, "premature judicial interference with the interpretation of a plan would impede those internal processes which result in a completed record of decision making for a court to review." Id. Plaintiff's failure to exhaust her administrative remedies prevents us from granting her the relief she seeks.

But even if Plaintiff had satisfied the exhaustion requirements, she failed to preserve her arguments that Defendant could offset her SSD only if she elected to seek Social Security benefits, that Defendant forced her to file for SSD in violation of Defendant's internal policies, and that the term "elect," in the context of her policy, was ambiguous. We have repeatedly held that "where an issue is raised but not pursued in the trial court, it cannot be the basis for the appeal," and "vague, arguable references to [a] point in the district court proceedings do not . . . preserve the issue on appeal." Lyons v. Jefferson Bank & Tr., 994 F.2d 716, 722 (10th Cir. 1993) (citing Monarch Life Ins. Co. v. Elam, 918 F.2d 201, 203 (D.C. Cir. 1990)). In her objection to Defendant's motion to dismiss, Plaintiff cursorily mentioned these arguments only in her Statement of Facts section by asserting: Defendant "forced Jill to file a claim for SSD benefits, in violation of Ex. 3[ ]—no insured is required to file a claim for Social Security benefits." As a result, the district court only briefly addressed the policy's Other Income Benefits language before concluding that Plaintiff failed to plausibly plead a denial of benefits or breach of fiduciary duty as a

15

result of the SSD offset.  Because Plaintiff failed to pursue her SSD offset arguments

at the district court, making only a vague reference to how the offset violates the

terms of her long-term-disability policy, we will not entertain Plaintiff's SSD offset

arguments.

V.

Plaintiff also alleges other harms relating to Defendant's breach of its

fiduciary duty to her by "failing to provide the records she requested during her

administrative appeal," as these breaches "deprived [her] of the opportunity to review

the purported basis for [Defendant]'s termination of her benefits and caused her to

incur additional expense to obtain evidence from Provident, her treating doctors, and

a vocational rehabilitation consultant during her administrative appeal."  In her

complaint's Prayer for Relief section, she specifies the relief she seeks with respect

to each claim she asserts.  As to her claim for relief based on Defendant's failure to

provide her records she requested during her administrative appeal—her third claim

for relief—she asks the court to:

> A. Declare that Defendant has breached its fiduciary duty to Plaintiff;
>
> B. Order Defendant to pay the attorney's fees and costs Plaintiff incurred to hire an attorney to pursue the administrative appeal to have her long term disability benefits reinstated;
>
> C. Order Defendant to reimburse Plaintiff for the SSD offset deductions it has taken from her long term disability benefits since 2008, plus prejudgment interest;
>
> D. Declare that Plaintiff has a right to receive her future monthly long term disability benefits from Defendant without SSD offset deductions;

E. Award Plaintiff reasonable attorney's fees and costs of suit pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and

F. Provide such other relief as the Court deems equitable and just.

In its order, the district court dismissed her third claim for relief, stating that Plaintiff "alleges no concrete harms resulting from these alleged breaches" but rather "simply reiterates [her] request for attorney's fees and reimbursement of Other Income Benefit deductions." The district court continued: "[E]ven assuming that [Defendant's] termination decision was arbitrary and capricious, benefits have been restored, and [Plaintiff] pleads no concrete harms stemming from the alleged irregularities in [Defendant's] handling of documents in the course of her appeal."

We agree. As evidenced by the relief she seeks to recover, this claim is basically a reiteration of her other two claims. The harm she alleges, at its core, stems from Defendant breaching its fiduciary duty by wrongfully terminating Plaintiff's benefits and improperly offsetting from her monthly payment the amount she receives in SSD. To make her whole, she seeks attorney's fees and to recover the money Defendant withheld due to her SSD. Because we affirm the district court's dismissal of her claims for relief under § 1132(a)(3) and for the SSD offset, reversing this claim's dismissal when its substance is either a derivative or a rebrand of the two other dismissed claims makes little sense.

Plaintiff fails to develop any argument that supports her allegation that the harm she suffered from Defendant's failure to produce certain documents is distinct from those stemming from the wrongful termination of her benefits and the SSD offset. Neither does she argue that compensable harm exists in the breach of the duty

17

itself under ERISA, regardless of its practical consequences.  Thus, the district court correctly decided that she failed to allege a concrete harm necessary to support her improper-document-handling claim.  Plaintiff's administrative appeal was successful, and Defendant reinstated her long-term-disability benefits.  Plaintiff is receiving all the benefits to which her policy entitles her.

AFFIRMED.